NELLIE CASEY, Appellee, *vs.* THE CHICAGO CITY RAILWAY COMPANY, Appellant.

*Opinion filed December 15, 1908.*

1. EVIDENCE—*what testimony by a physician should not be admitted.* A physician sent to examine an injured person with a view to testifying in an action for damages should not be allowed to testify that she showed nervousness, timidity and fear, that she trembled and shook and shrank away from him and cried and acted in a frightened manner, but the admission of such testimony is not necessarily ground for reversal.

2. SAME—*what is not a proper question for expert testimony.* Whether the removal of the clothes from a thirteen-year-old girl for an examination by a strange physician would tend to produce nervousness, timidity and shrinking on the part of the patient is not a subject for expert testimony.

3. SAME—*when the admission of evidence in rebuttal is proper.* Where a witness who has testified for the defendant in a personal injury case that, as the plaintiff's teacher, she had seen nothing in her appearance to indicate that she was not in good health, states, on cross-examination, that she had seen the plaintiff's mother at school once, the question whether she did not have a talk with the mother about the plaintiff's health, which she answers in the negative, is sufficiently specific as to time and place to authorize the rebuttal testimony by the mother that they did have such talk.

4. INSTRUCTIONS—*when refusal to instruct jury that there is no evidence upon a certain point is proper.* If there is any evidence tending to authorize the submission to the jury of the question whether the plaintiff's injury had anything to do with her subsequent bleeding from the nose and mouth, the weight and sufficiency of such evidence are for the jury; and it is proper to refuse an instruction that there was no evidence upon that point and that nothing should be allowed to the plaintiff on that account.

5. SAME—*when giving instruction referring to the material allegations will not reverse.* An instruction stating that if the plaintiff has proven the "material" allegations of her declaration by such weight of evidence as satisfies and produces conviction in the minds of the jury she has proven her case by a preponderance of the evidence is incorrect in leaving the jury to determine what allegations are "material," but the error will not necessarily reverse, particularly where the declaration has only one count, in simple form, and other instructions fully state what plaintiff must prove.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

JOHN E. KEHOE, and WATSON J. FERRY, (JOHN R. HARRINGTON, of counsel,) for appellant.

C. S. O'MEARA, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellee recovered a judgment in the superior court of Cook county for personal injuries alleged to have been caused by the negligence of appellant. Appellee was between eleven and twelve years old when injured, August 1, 1904, and was a passenger riding on one of the cars of appellant. The declaration, which contains but one count, charges that while she was in the exercise of due care and caution the car was carelessly and negligently run "through the gates which were lowered, breaking said gates, smashing same, and onto the steam car tracks, where the said car was struck by a train approaching and thrown from the tracks, and the said Nellie Casey was knocked down from said street car upon her head, and her body and head were bruised and hurt and injured, and she was internally hurt and disabled, and suffered from hemorrhages of the mouth and ears, and she became sick and sore and disabled, and so remained for a long space of time from thence hitherto, and avers that the said Nellie Casey is permanently injured and disabled in mind and body." The judgment in appellee's favor for $4500 has been affirmed by the Appellate Court, and a further appeal prosecuted to this court.

The errors assigned here relate to the rulings of the trial court in the admission of testimony offered by appellee and the rejection of testimony offered by appellant; also to

the giving of one instruction offered by appellee and the refusal of one offered by appellant.

The testimony that it is claimed was improperly admitted in behalf of plaintiff was that of Dr. Patrick, whose education and experience in nervous and mental diseases qualified him to testify as an expert upon those questions. He testified that he examined plaintiff about three weeks before the trial occurred. She was sent to him by her attorney for the purpose of procuring his opinion of her condition. At the time nothing was said about his testifying, but the doctor knew the lawyer who sent her to him had charge of her case, and said he knew it was quite common for attorneys to expect a doctor to testify in such cases after he had made an examination. Dr. Patrick did not give the plaintiff any treatment. He testified he first questioned the plaintiff and her mother, but was told by the court not to testify to anything that he "heard from the plaintiff." He testified her mother undressed her; that she showed general nervousness, timidity and fright, trembled and shook and looked scared; that she shrank away from him, notwithstanding he assured her he would do her no harm; that there was a tremor or fine quivering or a shaking of her body and extremities; that the knee jerk was absent and that the ankle jerk and achilles were very faint; that she had a perforation of the left ear drum; that her urine was very pale and of low specific gravity; that when he pressed along her spine she winced and cried, and did the same thing when he pressed her on either side. The doctor gave it as his opinion, from his examination, that she had an inflammation of the middle ear on the left side and was suffering from extreme nervousness, best described as hysteria, but he could not tell from his examination what was the cause of it. He further testified that hysteria leads to invalidism, poor health and suffering; that the cataleptic state appears in hysteria, and neurasthenia is frequently associated with it, and that this is sometimes curable and

sometimes not. Appellant objected to the doctor testifying to the plaintiff showing nervousness, timidity and fear, and to trembling and shaking and shrinking away from the doctor, and to her crying and acting in a frightened manner, but the court overruled the objection and admitted the testimony. We think the examination made by Dr. Patrick must be considered as having been made with a view to testifying in the case, and under the rule announced in *Greinke v. Chicago City Railway Co.* 234 Ill. 564, and cases there cited, appellant's objection should have been sustained. It remains to be considered whether this ruling of the court was so prejudicial to appellant as to require a reversal of the judgment.

The liability of appellant is not disputed and could not well be, for the proof shows that the gates where the street car tracks crossed the steam railroad tracks of the Grand Trunk railway were down as the car approached the railroad track, but that the car was run through the gates, breaking them down, and upon the railroad track, without being stopped. Dr. Kirby, a witness called by appellee, testified he was the surgeon of the Grand Trunk Railroad Company and by direction of his company went to see the plaintiff at her home the same evening the accident happened. He was also the family physician of the plaintiff's family. He testified the plaintiff was in bed and unconscious when he visited her; that her extremities were cold, the pupils of her eyes small, pulse rather weak and rapid; that there was a bruise on the left shoulder and a small one on her neck; that no bones were broken, but that she was suffering, in his opinion, from a concussion of the brain. Plaintiff was confined to the house about two weeks after her injury, during which time Dr. Kirby saw her frequently,—he thought perhaps every day. After that he saw her frequently, either at her mother's house or at his office, and has treated her ever since. The doctor gave it as his opinion plaintiff was suffering from minor epilepsy and stated

that he had seen her in two "spells," on which occasions she was "lying in bed unconscious and the head rotated to one side, the pupils dilated. There was no reaction to light. The light reflexes,—her reflexes,—were below normal. She was cyanotic,—that is, her face had that bluish appearance in both spells," but he observed no convulsive movement. The testimony of a number of neighbors was that the girl had been healthy before her injury but had not been since. The testimony of Dr. Patrick that plaintiff had a perforation of the left ear drum and that her urine was very pale and of very low specific gravity was competent. In *Greinke* v. *Chicago City Railway Co. supra,* while the testimony of an expert similar in character to that of Dr. Patrick was held to have been incompetent, it was also held that in view of the other evidence in the case it would not justify a reversal of the judgment, and the court quoted from *West Chicago Street Railroad Co.* v. *Maday,* 188 Ill. 308, on page 310, where it was said: "When the court can see from the record that an error committed by the trial court in the progress of the case was a harmless one, or that its injurious effect or harmful character was obviated, so as not to affect injuriously, in the final judgment, the rights of the party against whom the error was committed, it should not be allowed to work a reversal. It is more important in the administration of justice that litigation should end in the attainment of substantial justice than that a record of the proceedings should be built up which is without flaw or blemish." For the same reasons we are of opinion the error in this case should not reverse the judgment.

Appellant complains of the ruling of the court in refusing to permit a hypothetical question asked one of its medical experts to be answered. The question related to the probable effect of removing the clothes from a girl in ordinary health, of the age of thirteen years, for examination by a strange physician, and whether it would not tend to produce nervousness, timidity and shrinking in the patient.

In our opinion this was not a subject for expert testimony and the court did not err in not allowing the question to be answered.

It is also complained that the court erred in admitting testimony of plaintiff's mother in rebuttal. Miss Cox testified, for appellant, that she was plaintiff's teacher in the school she attended in September and October, 1905, and that she saw nothing in her appearance to indicate that she was not in good health. On cross-examination she was asked if she had ever seen the plaintiff's mother at school, and replied that she had seen her there once. She was then asked if she and complainant's mother had not had a talk about the plaintiff's health, in which certain things were said between them about plaintiff's health and her remaining in school and being allowed to go home when she felt badly. She answered they had not had such talk. In rebuttal plaintiff's mother was permitted to testify that they did have the talk which Miss Cox said they had not had. It is contended this testimony was incompetent, for the reason that Miss Cox's attention was not directed to the specific conversation and no time or place specified when and where it occurred. We do not think this objection well taken. Miss Cox testified that she remembered plaintiff's mother being at school on one occasion, and it was at that time she was asked if she had not had a certain conversation with her, and it was at that time the witness testified in rebuttal that the conversation occurred.

The proof showed that appellee began, soon after her injury, having frequent and profuse hemorrhages from the nose and throat. Dr. Kirby testified he examined her nose and throat and found she had adenoids and that the hemorrhage came from the adenoids, and that in his opinion the adenoids resulted from catarrhal irritation and not from the injury plaintiff received. In this he was supported also by the testimony of medical experts called by appellant. Dr. Patrick gave it as his opinion, on cross-examination, that

the shaking up appellee received on the occasion of her injury might have the effect of causing or influencing, to some extent, the condition of plaintiff's nose and throat. Appellant asked the court to instruct the jury that there was no evidence tending to show that the bleeding from the nose complained of by plaintiff was the result of the accident and that they should allow plaintiff nothing on that account. The court refused to give the instruction, and this, it is urged, was erroneous. It appears from the substance of the testimony above set out that there was some evidence upon which to submit to the jury the question whether the injury plaintiff received had anything to do with her bleeding from the nose. Its weight and sufficiency are not subjects for our determination. Besides, in a number of instructions given on behalf of appellant the jury were told that the plaintiff could only recover for disabilities which the preponderance or greater weight of evidence showed resulted from the accident; that the burden was not on appellant to show that plaintiff's disabilities arose from other causes than from the accident, but as to every disability for which she claimed damages it was incumbent upon her to prove that such disability was proximately caused by the accident, and that as to any disability which she did not so prove by a preponderance of the evidence she could not recover. In view of the evidence and the instructions given for appellant we are of opinion no error was committed in refusing the instruction complained of.

In one instruction given for appellee the jury were told that if plaintiff had proven the material allegations of her declaration by such weight of evidence as satisfied and produced conviction in the minds of the jury she had proven her case by a preponderance of the evidence. It is urged that this instruction was erroneous, in that it left the jury to determine what the material allegations of the declaration were. Such an instruction has been held to be incorrect

but is not always ground for reversal. In *Baker & Reddick* v. *Summers,* 201 Ill. 52, an instruction of similar character was held erroneous. There were also other instructions given in that case that were held erroneous, and that judgment was reversed. In *Toledo, St. Louis and Kansas City Railroad Co.* v. *Bailey,* 145 Ill. 159, such an instruction was held erroneous, but it was also held, as the instructions given on behalf of the defendant fully informed the jury what was necessary to be proven to entitle plaintiff to recover, it was impossible that the jury could have been misled, and giving the erroneous instruction could not have prejudiced the defendant. In *Harvey* v. *Chicago and Alton Railway Co.* 221 Ill. 242, there was a judgment for the defendant. On appeal to this court it was urged as grounds for reversal that the court instructed the jury, at defendant's request, that the plaintiff was required to prove the truth of the material allegations of the declaration, or some count thereof, by a preponderance of the evidence, and if he failed to do so the jury should find the defendant not guilty, and it was held giving such instruction would not justify a reversal of the judgment. There doubtless are cases where such an instruction would require a reversal. In this case, however, the declaration contained but a single count in very simple form, and the instructions given very fully told the jury what plaintiff was to prove in order to entitle her to a verdict. We can see no possibility of the jury having been misled or confused by the instruction.

This record is not free from error, but the errors considered, in view of the whole case, are, in our opinion, not sufficient to justify the reversal of this judgment, and it is therefore affirmed.              *Judgment affirmed.*