### James A. Elward, Appellee, v. Illinois Central Railroad Company, Appellant.

1. EVIDENCE—*what testimony of medical expert incompetent.* It is improper to permit medical experts (not attending physicans) to express opinions to the jury based upon subjective conditions and then to fortify such opinions by stating to the jury acts of the injured party which could apparently have been voluntary and under the control of the injured party, and which might have rested upon another basis than the truthfulness of the injured party. It is likewise improper to permit such witnesses to express their speculative opinions as to what might possibly have been the cause of the injury, and that such injuries would probably shorten life, etc.

2. EVIDENCE—*as to what medical expert competent.* A physician who has not treated an injured person but has made an examination to enable him to testify on the trial as to his condition, must base his opinion on objective and not subjective conditions. He cannot relate nor take into consideration the self-serving statements of the injured person made to him not with reference to treatment but with reference to his trial.

3. DAMAGES—*what does not justify in action for personal injuries.* A mere disability or even a reasonable probability that

future pain or suffering may be caused by an injury and that some disability may result therefrom, is not sufficient to warrant an assessment of damages. To justify recovery of future damages the law requires proof of a reasonable certainty that they will be endured in the future.

Action in case for personal injuries. Appeal from the Circuit Court of De Witt county; the Hon. W. G. COCHRAN, Judge, presiding. Heard in this court at the May term, 1910. Reversed and remanded. Opinion filed May 26, 1911.

LEMON & LEMON, for appellant; JOHN G. DRENNAN, of counsel.

HERRICK & HERRICK and EDWARD J. SWEENEY, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

In an action on the case the plaintiff recovered judgment for the sum of $7,000 upon the verdict of a jury, for damages received by him while a passenger upon the defendant's railroad, through a collision of the forward and rear portions of the train. The defendant urges a reversal of the judgment upon the ground that the damages awarded by the jury are manifestly excessive and based upon improper evidence relating to that question, claiming that such errors are so interwoven in the entire proceeding that a *remittitur* would not cure.

The evidence discloses that the plaintiff was for nearly twenty years immediately prior to the time he was injured, a traveling salesman; that on August 18, 1908, while he was a passenger on one of the defendant's trains, the caboose in which he was riding, together with a freight car immediately in front of it, became detached from the main body of the train while going down grade. When the main part of the train stopped at a station, the caboose and freight car collided with it, whereby the plaintiff, who was riding in the caboose, was caused by the force of the collision to

be thrown eight or ten feet from his seat against a wooden partition, striking the same with his head. As the result he was rendered unconscious for a time; received numerous cuts and bruises, several of his teeth were broken or knocked loose; and he was injured in the back of his neck and in the region of the stomach. For six weeks thereafter he was under the care of Dr. Rosenberry, local surgeon of the defendant, and thereafter, on September 8, 1908, was taken in charge by the Doctors Edmonson. In December, 1908, and June, 1909, he was examined by Dr. Patrick of Chicago, who when called by the defendant testified that there had been no change in the condition of the plaintiff between said dates, and that it was impossible to tell approximately when, if ever, he would recover from his injuries; that the stiffness in his back would remain as long as the cause, and that there might be some organic results from the accident. Five surgeons called on behalf of the plaintiff, testified that he was permanently injured, and four of them, that his spinal chord had sustained injuries and was in an irritated and inflamed condition, which in turn produced other conditions of a permanent nature, incapacitating appellee from work of any kind. Dr. Rosenberry, who had the exclusive charge of appellee during three weeks following the injury, testified that as a result of concussion he was suffering from an inflammatory condition of the spinal chord, which would never improve, and from which he would never recover.

There is also evidence tending to show that the plaintiff, for almost eighteen months, and up to the time of the trial, was incapacitated from following his usual employment; that his head was turned to one side, his muscles thickened and stiff, his back, shoulders and neck rigid, and the motion of his arms limited; that he had chronic diarrhea, and that his liver was affected; that he had continuously suffered pain and loss of sleep; that his gait was affected, and that he

had many of the symptoms which precede paralysis.

The liability of the defendant is not controverted. There is sufficient evidence in the record, the competency of which cannot be questioned, to justify a substantial verdict. We find nothing in the proceedings upon the trial which would warrant the assumption that the prejudice, sympathy or passion of the jury was in any way unduly aroused. If the rulings of the trial court upon the evidence were proper the amount of the verdict was fully justified, inasmuch as such evidence shows that there was a reasonable probability that the injuries were permanent in character and effect. On the contrary if the jury, by reason of having been permitted to consider incompetent evidence, were led to believe that the injuries were permanent and in consequence awarded larger damages than they would otherwise, their verdict should not be permitted to stand. The evidence upon this issue consisted almost entirely of the testimony of physicians who had examined him, not in the regular course of treatment, but for the purpose of qualifying themselves as witnesses upon the trial. It was therefore manifestly important that the rules of evidence governing the admissibility of such testimony should have been accurately observed. The decisive question for our determination is, therefore, whether or not the court erred in its rulings upon the evidence in the particulars specified by counsel for the defendant, and thus led the jury to believe that they were warranted in finding that such injuries were permanent.

Dr. J. C. Myers, who had on three different occasions since the institution of the suit, examined the plaintiff, solely with a view to informing himself of his physical condition, and not for the purpose of treating him, was permitted to state over objection, that the muscles of the plaintiff's neck were rigid and stiff and of limited motion; to state to what extent the motion of the head was affected by the muscular condition which he

found; that the motion of appellee's left arm was limited and painful, and the motion of the right arm much better; that he tested the motion of the arm by taking the patient by one hand and shoulder and rotating the arm; that the superficial reflexes were tested by pricking the skin with a pin and that the same were sluggish and not responsive. The witness was also permitted, over objection, to elaborate this symptom and upon that symptom, combined with others, to express his opinion that the conditions indicated by such symptoms were the natural result of some kind of a concussion. He was also permitted to state, over objection, that at an examination of the plaintiff on the day previous, "the perspiration just oozed out of him and streamed down the side of his face and all over him"; that a man could not simulate sweating; that the plaintiff was stripped at the time and that "he was doing as he told him and standing up and attempting to bend his body or whatever else we told him," and that in the opinion of the witness the cause of the sweating was "exhaustion." He was further permitted to give his opinion based upon the symptoms narrated by him, that there was an injury to the plaintiff's spinal column and to the medulla oblongata and the muscles of the back, and that in his opinion the injuries indicated by the symptoms mentioned by him were growing worse, and that in the future the plaintiff would be paralyzed on the left side and his life shortened. Upon cross examination the witness stated that one of the tests he had made to determine the degree of muscular contraction, was to have the plaintiff lift a bucket of water; that he examined the superficial reflexes by pressing on the dorsal muscles, upon which the plaintiff flinched, and from which the witness concluded there was tenderness over the spine.

To Dr. Albert W. Myer, whose examination of the plaintiff was with a view of testifying as to his condition and not for the purpose of treatment, a hypothet-

ical question was propounded which assumed that the plaintiff received certain injuries in a railroad wreck on or about August 18, 1908, and upon such hypotheses and the conditions he found in his examination, was allowed to state that in his opinion such conditions were the result of the injuries received in said railroad wreck. He was also allowed to state that the stiffness of the muscles of the back, neck and shoulder of the plaintiff was due to spinal irritation. Upon being examined relative to the perspiring of the plaintiff during the examination, he was permitted to state, over objection, that he attached importance to that fact, and upon being asked what significance he attached to it he answered, "The pain produced by the examination and the worry and exhaustion of the patient were both factors, I think," which answer the court refused to exclude. He was also permitted to state, over objection, that he discovered by pressing along the course of the plaintiff's spine, that he had irritation of the spine; that the effect of such irritation was to interfere with his nutrition and sleep in every way; that it made him more nervous, more irritable, and affected his ability to concentrate thought, and to sleep, digest and assimilate food; that the effect of the condition which these symptoms indicated, would be to shorten the life of the plaintiff. On cross examination he stated that he got his information as to the injuries that the plaintiff had received, from another doctor and from the plaintiff himself; that in order to make a fair and full examination he got the history of the case, and that if he had not known something of the plaintiff having been in a railroad train somewhere and something happening to him, he did not believe he could have stated what his condition was. He further stated that there was not a superficial muscle of the back that was not subject to the control of the mind.

Dr. Bath, who had examined the plaintiff on two different occasions in order to qualify himself to testify, was asked whether a violent blow or shaking

about might cause the injuries described by him to the plaintiff's neck and shoulders, and was permitted to answer that he thought it was possible. He further testified that in two of the examinations he found that the head of the patient was turned considerably to the left side, and that in his opinion a violent blow might have caused such injury; and further that the plaintiff had spinal irritation; that the injuries to his head and neck were permanent, and the result of the injury to his spine would be to lower the plaintiff's mental and physical usefulness. He was asked what in his opinion would be the usual and probable result of the injury to the spine upon the life of the patient, and answered that it would certainly not make the patient's life any more comfortable, and would probably shorten it; that it was "usually considered to shorten life."

Proper objections, exceptions, and motions to exclude necessary to preserve exceptions to such of the foregoing evidence as was incompetent, were interposed by the defendant. It was clearly improper to permit these witnesses to express opinions to the jury based upon subjective conditions and then to fortify such opinions by stating to the jury, acts of the injured party which could apparently have been voluntary and under the control of the injured party, and which might have rested upon another basis than the truthfulness of the injured party. Greinke v. Ry. Co., 234 Ill. 564; Casey v. Ry. Co., 237 Ill. 140. It was also error to permit these witnesses to express their speculative opinions as to what might possibly have been the cause of the injury and that such injuries would probably shorten his life, or that a violent blow could or might have caused such injuries, and upon such opinions intermingled with subjective conditions, such as that the plaintiff's head was turned considerably to one side, that the injuries to his head and neck were permanent and that his spine was injured.

A mere possibility or even a reasonable probability

that future pain or suffering may be caused by an injury, or that some disability may result therefrom, is not sufficient to warrant an assessment of damages. It would be plainly unjust to require a defendant to pay damages for results that may or may not ensue, and that are merely problematic. To justify a recovery for future damages, the law requires proof of a reasonable certainty that they will be endured in the future. Amann v. Traction Co., 90 N. E. 673; 243 Ill. 263. Future consequences of the injury must be shown by the evidence to be reasonably certain to result, and they cannot be purely speculative. Lauth v. Traction Co., 244 Ill. 244. It is now well settled in this state that a physician who has not treated the injured person, but has made an examination to enable him to testify on a trial as to his condition, must base his opinion on objective and not subjective conditions. He cannot relate nor take into consideration the self-serving statements of the injured person made to him not with reference to his treatment but with reference to his trial. Greinke v. Ry. Co., 234 Ill. 564; Casey v. Ry. Co., 237 Ill. 140; Shaughnessy v. Holt, 236 Ill. 485; Fuhry v. Ry. Co., 239 Ill. 548. Appellee was thus allowed to enhance his damages by self-serving statements—to what extent it is impossible to say. The law admits in evidence the declarations of an injured party as to his physical condition given to physicians during treatment, because it is presumed that the injured party will not falsify in his statements made to the physician when he expects and hopes to receive medical aid; but no such presumption arises when he is examined by an expert for the purpose of giving evidence in a case about to be tried. Shaughnessy v. Holt, *supra*.

To just what extent the amount of the verdict was affected by the incompetent testimony referred to, it is impossible to determine, and we are unable to say that it was not prejudicial to the defendant. We are

therefore impelled to reverse the judgment of the Circuit Court and remand the cause for another trial.

The motion by appellee to tax cost of additional abstract to appellant, is denied.

*Reversed and remanded.*