## Chicago Union Traction Company v. Mary Faurot.

### Gen. No. 13,361.

CONDUCT OF COUNSEL—*when ground for reversal.* A baseless insinuation brought by counsel to the attention of the jury, if prejudicial, is ground for reversal.

Action in case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1906. Reversed and remanded. Opinion filed October 4, 1907.

JOHN A. ROSE and ALBERT M. CROSS, for appellant; W. W. GURLEY, of counsel.

JOHNSON & BELASCO, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is an action brought by appellee to recover for personal injuries alleged to have been caused by negligence of appellant. The charge in the declaration is that the defendant "carelessly, negligently, wilfully and wantonly caused said car * * * to be suddenly started, jerked and moved and run forward while the plaintiff was in the act of leaving the car."

It is contended in behalf of the defendant that the verdict is not supported by, but is against the evidence. The accident occurred about 6 o'clock on an evening in the month of November. Plaintiff testifies that she was a passenger upon one of the street cars operated by defendant. She states that she had paid her fare, and that as the car was approaching Garfield avenue, Chicago, she asked the conductor to let her off there. The car stopped at Garfield avenue, and plaintiff states that she went to the platform to get off and that as she was standing on the step below the platform in the act of getting off, the conductor rang the bell, the car gave a sudden jerk and threw her off, causing the injuries complained of. It is said by her attorneys that plaintiff is corroborated in her version of the accident by one of her witnesses, a Miss Johnson. The latter's testimony, however, is that "as the car approached Garfield avenue it stopped to let off passengers. As it stopped Mrs. Faurot got up to get out. She said goodnight and the car—and the car—well, the car was stopped and she said good-night and I didn't pay any more attention to it until there was a jerk and I heard this scream and I rushed out to see if it was this lady I had been talking to. I found her just a short distance from the front platform of the trailer." On cross-examination the witness said, "I followed her with my eye just long enough to nod and say good-night," that "there was a jerk and this scream. It was quite a jerk." This is all the testimony in behalf of plaintiff as to the manner of the accident. It is evident from her testimony that the witness Johnson does not know and does not pretend to state just how the accident happened. She paid no attention to the car or to plaintiff's movements after bidding her good-night when plaintiff got up to leave the car, until there was a jerk and she heard a scream. We fail to find in her testimony evidence corroborative of plaintiff's statement that the car was started while she was in the act of getting off.

There is testimony in behalf of defendant, given by a young woman, a passenger on the same car, to the effect

that the train consisted of a grip car and two trailers, that plaintiff was a passenger on the first of these trailers, that the car had stopped and the conductor had given the signal for the car to start again before plaintiff started to go out on the platform from her seat near the door, that the car was just in motion, beginning to go when plaintiff went off, that the bell to start the car rang just as plaintiff "got up from her seat to go out," and the witness does not remember that the car started with a jerk. The conductor in charge of the car in question testifies that after the train stopped at Garfield avenue and "after everybody else got off, and I gave the bell to start she (plaintiff) came walking by me. I started through the car to the front end to collect the fares and I met her. I turned around and looked back She didn't say anything, but kept on going. I got a little further and she was on the back end. I see she was going to get down and I gave the bell to stop immediately, but she stepped right off and fell." The evidence tends to show that the car was stopped almost immediately, within a few feet of where plaintiff fell. A third witness in behalf of appellant, who states that he was on the front platform of the second trailer, immediately behind the car on which plaintiff was riding, testifies as follows: "The car was in motion when I caught sight of her. She may have started to move before the car started. When I first caught sight of her she was pushing through the crowd to get out of the door. She stepped forward. The conductor had given the bell to go forward and the car was in motion when she came through the crowd evidently bent on getting off. The people called to her not to do it and told her to wait until the car stopped. She didn't heed. She continued right on and stepped off the car and quite naturally, the car being in motion, she fell." The witness states that he heard the bell "right at the instant she stepped off."

It appears therefore that the plaintiff's case rests upon her own testimony to the effect that after the car had stopped and while she was in the act of getting off, having put out her right foot to get off and while her left foot was still

upon the lower step, the car started with a sudden jerk and threw her off.   On the other hand there are three witnesses, one the conductor of the car and two others who were passengers and, so far as appears, entirely disinterested witnesses, who testify that she started to get off after the car was in motion and fell in consequence of her own negligence in this regard.   This testimony cannot be disposed of as plaintiff's counsel attempts to do, by an assertion that "no reasonable minds could give any weight or credit" to it, or that it "is too absurd for serious consideration."   No reason appears why it is not entitled to as much weight as that of plaintiff herself, which it directly contradicts.   If it be true that plaintiff's injuries were the result of her own negligence, then such injuries, be they more or less severe, give her no right to compensation from the defendant.

In view of the contradictory evidence and the character of the testimony, it was especially important that the trial should be free from anything prejudicial to a free and impartial consideration by the jury of the cause upon its merits.   It is urged by defendant's counsel that both in the examination of witnesses and in the argument of counsel for the plaintiff in his address to the jury the latter was guilty of attempting to prejudice the jury against defendant and its witnesses by questions and assertions wholly incompetent and unwarranted by any evidence admissible in the case.   One of these was a question put on cross-examination of one of defendant's witnesses in reference to a letter she had written stating that she saw the accident, which question was: "And you believed it was the company's fault, that is the reason you wrote the letter."   An objection to the question was sustained by the trial court, but the question was calculated and doubtless intended to lead the jury to suppose that the witness, whose testimony as to the circumstances attending the accident was contradictory to that of plaintiff, had been influenced in some way to testify falsely, an insinuation without any support in the evidence. In defense of the question plaintiff's attorney say that "from an examination of the letter it seems apparent that

the writer at the time the letter was written to appellee believed she had been injured through the carelessness and negligence of appellant." We discover nothing in the letter that bears any such construction, and it is not addressed to appellee, but to "S 94 Daily News, City. Gentlemen;" in reply to an advertisement, and there is nothing to show that the witness knew who "S 94 Daily News" was or represented. As said by the Supreme Court in Chicago City Ry. Co. v. Gregory, 221 Ill., 591–598: "The question here is whether a party will be permitted by indirect means to acquaint a jury with facts which he is not allowed to bring to their attention by direct proof," and the statement was approved, "that everything having a tendency to prejudice or influence a jury in their deliberations which is not lawfully admissible in evidence on the trial of the cause should be, so far as possible, kept from coming to their knowledge during the trial." In the case at bar it was not improper facts but an apparently baseless insinuation that was thus brought to the jury's attention. Of a like character was the reference to the witness as a stenographer in the employ of the Estate of Charles T. Yerkes, deceased, and the insinuation that something was wrong with the testimony of another witness for defendant whose recollection appeared perfectly good, because a statement which he had made was not submitted "to him to refresh his recollection," which would have been clearly improper. We know of no excuse for an argument to the jury that because defendant had not offered to prove that it had requested plaintiff to submit to an expert examination as to her condition claimed to have resulted from the alleged injury, an examination which defendant had no power to obtain without the plaintiff's consent, and which so far as appears she had not offered to submit to, that the jury might infer that it was the "opinion of doctors that know and were in the case that her trouble was caused by those injuries, and they saw it was and that is the reason they didn't put them on." We think the learned trial court erred in ruling that this was "proper argument." The issue here was a plain and simple

issue of fact. There was nothing in the case to justify attempting to excite, or appeals to passion or prejudice on the part of the jury. It has been said by the Supreme Court: "Trial courts should not hesitate to use their authority to restrain all efforts of attorneys to obtain verdicts by using unfair means, * * * and whenever such restraining influences do not effect the purpose, the fruits of such unprofessional conduct ought to be taken away by granting a new trial." West Chi. St. Rd. Co. v. Annis, 165 Ill., 475, approved in Chi. Union Traction Co. v. Lauth, 216 Ill., 176–177. See also Wab. R. R. Co. v. Billings, 212 Ill., 37; West Chic. St. R. R. Co. v. Kean, 104 Ill. App., 147; and there are many other cases.

The judgment of the Circuit Court must be reversed and the cause remanded.

*Reversed and remanded.*