THIRD DISTRICT—OCTOBER, 1913. 395

Lisenbury v. St. Louis and Springfield Ry. Co., 184 Ill. App. 395.

# Ellen Lisenbury, Appellee, v. St. Louis and Springfield Railway Company, Appellant.

1. DAMAGES, § 114*—*when two thousand five hundred dollars for personal injuries to woman excessive.* In an action against an interurban railroad company to recover damages for personal injuries sustained by plaintiff by reason of a collision while plaintiff was a passenger, a verdict for two thousand five hundred dollars *held* excessive, it appearing that plaintiff was a married woman thirty-two years of age, that the only visible signs of injuries was a scratch on her face, bruises on her shins and knees and a red mark on her back, and that she suffered from a prior existing womb trouble aggravated by the accident.

2. DAMAGES, § 45*—*measure of damages where the injury resulted in aggravating a prior existing disease.* Where plaintiff prior to injury had diseases which were aggravated by the injury, damages may be allowed for such part of the diseased condition as the negligence caused.

3. DAMAGES, § 35—*proof of future damages.* To justify a recovery for future damages the law requires proof of a reasonable certainty that they will be endured in the future. A mere possibility or even a reasonable probability that future pain and suffering may be caused by an injury is not sufficient to warrant an assessment of damages.

4. TRIAL, § 130*—*when remarks of counsel improper.* In an action against a railroad company to recover damages for personal injuries sustained by plaintiff in a collision, counsel for plaintiff in concluding his argument to the jury made the statement: "This company could not have inflicted this injury more wilfully if the president of the company had struck her in the face with a ball bat." *Held,* the court properly sustained an objection to the statement and instructed the jury to disregard it.

5. APPEAL AND ERROR, § 1632*—*when ruling of court will not cover inflammatory remark of counsel.* Where counsel in his argument to the jury seeks to inflame the passions of the jury or to excite their sympathy, a ruling of court cannot remove the effect of the inflammatory remark.

Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the April term, 1913. Affirmed on remittitur; otherwise reversed and remanded. Opinion filed October 16, 1913.

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

GRAHAM & GRAHAM and H. C. DILLON, for appellant; GEORGE W. BURTON, of counsel.

W. ST. J. WINES, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is a suit to recover for personal injuries sustained by Ellen Lisenbury while a passenger on an interurban car of the St. Louis and Springfield Railway Company. No claim is made in this suit for damages for loss of time or medicine or other expenses. There was a verdict and judgment for twenty-five hundred dollars in favor of plaintiff, and the defendant appeals.

Appellee, a married woman thirty-two years of age, resided on a farm six miles south of Springfield. On August 17, 1912, she purchased a round trip ticket from Woodside to Springfield, went to Springfield to market some chickens and eggs, and after concluding her business there boarded a car for her home, and took a seat near the middle of the car. Two miles from Woodside the car was backed on a siding to permit the northbound car to pass at that place. It was the duty of the conductor of the car on the siding to close the switch. This he neglected to do with the result that the northbound car ran into and collided with the car on which appellee was a passenger. Appellee was injured; the visible signs of her injuries were a scratch on her face, bruises on her shins and knees and a red mark on her back. The only contention of appellant is that the judgment is excessive.

The appellee testified that before the accident she weighed one hundred and ninety pounds, was strong, active and free from nervousness or suffering, that after the accident she was stunned so that she did not know how she got off the car; that she was hurt from her waist down; she began to flow and that this continued for two weeks, and that at the time of the trial

she weighed one hundred and sixty pounds. After the accident she, with other passengers, was taken on a relief car to Springfield, then she took a car to Woodside and was conveyed to her home. Dr. Primm was called to attend her at her home that afternoon. He testified that she did not make any complaint of bleeding and that he did not find her suffering to any great extent, that she told him she had taken morphine in the morning and he left some morphine to quiet her nerves. Dr. Fletcher was then called and attended her two weeks at her home. He testified that she was always a nervous woman; that he had made two examinations of appellee before the accident, the last about a year before it; that he then found a fixed and enlarged womb with possibly some retroflexion with a discharge from the womb at that time; that he examined her three days after the accident; that she complained of soreness but had no flowing at that time; that he treated her until September 17, when he thought she could walk, and insisted on her walking, but she complained of inability to walk and that she then had a discharge, which was not menstrual. When Dr. Fletcher insisted that she walk he was discharged and Dr. Van Wormer was called to attend her. She was taken to St. John's Hospital in Springfield, where she was put under an anaesthetic and examined by Dr. Van Wormer, Dr. Mantz and Dr. Morrison; they found the womb fixed and displaced, a mass in the right side of the pelvis and a thickening of the left side. They agreed that an operation should be performed later, but that they should wait to see what would develop. On October 3rd, she left the hospital and returned home where she remained in bed five weeks. She was then again taken to the hospital where an operation was performed by these three doctors, who found her trouble partly chronic and partly acute. The diseased condition then found was of long standing; the womb, intestines and all the structures of the pelvic region were involved in an adherent mass; the fallopian tubes were dis-

eased so that one had to be removed, and cysts containing clear fluid were found in the ligaments supporting the womb. They say her condition was due to a previous specific germ disease of much longer standing than the previous August. While appellee testified she had previously suffered no pain, yet on cross-examination she admitted that she had previous to her injury at different times consulted Doctors Bradley, Fletcher, Southwick, Law and Theis concerning womb difficulties, and she refused to answer some questions even after being advised by the court that she should answer. W. A. Crane testified that in the latter part of July, 1912, she told him as a reason why she was selling some very young turkeys that she was sick and expected to go a hospital any day; the part of this conversation with reference to her going to a hospital, however, was denied by appellee. The testimony of Doctors Bradley, Fletcher, Van Wormer, Mantz and Morrison is that her condition was chronic before the accident, although some of them say it is possible the collison might have intensified the adhesions and long existing inflammation and they also say it was probable that an operation was necessary because of appellee's chronic condition.

In a case against a city for personal injuries caused by a defective sidewalk it was said: "If, prior to the injury, plaintiff had diseases which were aggravated by the fall she might recover from the defendant, but its liability would be measured by the damages which were the natural and proximate result of its negligence. The evidence tended to show something more than a mere latent tendency to particular diseases, and if there was an aggravation of the existing diseases the city would only be liable for what resulted from the fall." *City of Rock Island v. Starkey,* 189 Ill. 515. "The defendant must respond in damages for such part of the diseased condition as its negligence caused." *Chicago City Ry. Co. v. Saxby,* 213 Ill. 274.

"A mere possibility, or even a reasonable probability, that future pain or suffering may be caused by an injury, or that some disability may result therefrom, is not sufficient to warrant an assessment of damages. It would be plainly unjust to require a defendant to pay damages for results that may or may not ensue and that are merely problematical. To justify a recovery for future damages the law requires proof of a reasonable certainty that they will be endured in the future." *Amann v. Chicago Consol. Traction Co.,* 243 Ill. 263; *Lauth v. Chicago Union Traction Co.,* 244 Ill. 245. The weight of the evidence tends to show that the accident was not the proximate cause of appellee's condition and suffering although it may have been intensified by the accident. She is only entitled to recover for that part of her suffering and condition which probably resulted from the injury.

In the concluding argument of counsel to the jury he made the statement: "This company could not have inflicted this injury more wilfully if the president of the company had struck her in the face with a ball bat." The court properly sustained an objection to the statement and instructed the jury to disregard it. Where counsel seek to inflame the passions of the jury or to excite their sympathy, a ruling of the court cannot remove the effect of such an inflammatory remark.

We are of the opinion that the damages allowed are clearly excessive in view of the previous condition of appellee as shown by the great preponderance of the evidence. If appellee will remit to twelve hundred and fifty dollars within ten days, the judgment will be affirmed for twelve hundred and fifty dollars, otherwise the judgment will be reversed and the cause remanded for a new trial for the reason the judgment is excessive.

*Affirmed on remittitur; otherwise reversed and remanded.*