WILLIAM R. McCoy, Defendant in Error, vs. THE CHI-
CAGO AND ALTON RAILROAD COMPANY, Plaintiff in
Error.

*Opinion filed April 22, 1915—Rehearing denied June 11, 1915.*

1. RAILROADS—*whether a shop yard switching crew and main
yard switching crew are fellow-servants is a question of fact.*
Whether the members of a switching crew working in shop yards
under the direction of the superintendent of the shops are fellow-
servants of a switching crew working in the main yards under the
direction of the yardmaster is a question of fact for the jury.

2. SAME—*when the questions of assumed risk and contributory
negligence are for the jury.* Whether a switch-crew foreman sit-
ting on a coal car with his legs hanging down over the side as-
sumed the risk of injury from his legs coming in contact with a
car which had been pushed out too far on a side-track, or was jus-
tified in relying upon a proved custom of leaving cars on the side-
track in such a position as to clear a person clinging to the side of
a car passing on another track, or whether he used due diligence
in so sitting on the car, are questions of fact for the jury.

3. SAME—*what offered proof incompetent.* An offer to prove
by the engineer of a switching crew that the reason he did not
give warning to the foreman of the crew or stop his engine when
he saw the foreman was sitting in a position where his legs would
probably come in contact with a car on another track was because
he assumed the foreman saw what he, the witness, saw, and that
the foreman would change his position to one of safety before the
car was reached, is properly refused.

4. SAME—*master is liable if his negligence combined with neg-
ligence of a fellow-servant caused the injury.* If an injury results
from the negligence of the master combined with that of a fellow-
servant of the injured person, and the injury would not have hap-
pened if the master had used due care, then the fact that the fel-
low-servant's negligence contributed to the injury does not relieve
the master from liability.

5. SAME—*when refusal of fellow-servant instructions is not er-
ror.* Refusal of the court to give instructions merely informing
the jury that the plaintiff cannot recover for injuries caused by
the negligence of a fellow-servant is not error, where there is no
instruction offered which defines fellow-servants.

6. SAME—*when a judgment will be reversed for improper re-
marks of counsel.* A judgment rendered in favor of a switchman
and against his employer will be reversed where his attorney, in his

argument to the jury, characterizes as barbaric and a disgrace to our laws the rule of fellow-servants and the rules of assumed risk and contributory negligence, and insists, after objection is sustained, on his right to criticise the law, as such remarks must be regarded as an appeal to the jury to disregard the defenses which the defendant had interposed and had a right to have considered by the jury.

FARMER, C. J., and CRAIG, J., dissenting.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

BRACKEN & YOUNG, (SILAS H. STRAWN, of counsel,) for plaintiff in error.

DEMANGE, GILLESPIE & DEMANGE, for defendant in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

The defendant in error, William R. McCoy, obtained a judgment for $15,000 in the circuit court of McLean county against the Chicago and Alton Railroad Company, plaintiff in error, for personal injuries alleged to have been sustained by him while in the employ of plaintiff in error. This judgment was affirmed by the Appellate Court for the Third District, and the record is brought to this court for review by writ of *certiorari*.

The grounds urged for reversal are, the refusal of the trial court to direct a verdict of not guilty, the exclusion of testimony offered by plaintiff in error, the refusal of certain instructions, and the refusal to grant a new trial because of improper remarks made by counsel for defendant in error in his closing argument to the jury.

The testimony on the part of defendant in error tended to prove the following facts: Defendant in error was in the employ of the plaintiff in error as a switchman in its

railroad yards in the city of Bloomington and had been engaged in such service for several years. At times he worked as foreman of an extra switching crew, and he was working in that capacity at the time he received the injury complained of. After reporting for work on the day he was injured he was ordered to take charge of an extra switching crew and was given orders written on cards by the yardmaster. In addition to the written orders he was given verbal orders to take five cars of coal which were standing in the yards to the coal chutes. The switching crew consisted of defendant in error, an engineer and fireman, and two switchmen, one of them a man by the name of Snyder. The railroad yards of plaintiff in error extend in a northerly and southerly direction through the city of Bloomington and are located on each side of the main track of its road and are divided into what are called the east and west train yards. From these train yards switch tracks extend to various industries and business houses in the vicinity. The switching is usually done by two crews,—one operating in the east and the other in the west train yards. An extra crew is put to work in the yards as occasion requires. These crews are employed in making up trains and transferring cars of merchandise to and from the various business houses and industries adjacent to the railroad. West of the west train yards are the shop yards, where extensive shops for repairs and construction work are maintained. These yards are inclosed and are connected by tracks with the west train yards. A separate engine and crew are used in the shop yards. The train yards crews work under the orders of the yardmaster, while the shop yards crew works under the orders of the superintendent of shops, although that crew is employed by the yardmaster. When a train yards crew has occasion to deliver a car for any purpose to the shop yards it is taken to the entrance of the shop yards and left there, from which point it is handled by the shop yards crew. Occasionally the shop

yards crew has occasion to deliver cars to the train yards, at which times the car is placed in the train yards at the proper place for further handling by the train yards crews. One of the tracks in the west train yards is known as the third main. A switch track leading from this track to the north, and parallel with and west of it, is known as old track No. 1. A shorter switch track, known as the McCarthy track, also leaves the west side of the third main a short distance south of the junction of old track No. 1 with the third main and extends north for a distance sufficient to accommodate six or seven cars, depending upon the length of the cars, when it forms a junction with old track No. 1. The cars of coal which defendant in error was directed by the yardmaster to transfer to the chutes were standing, together with other cars, on old track No. 1, the south end of the string being about 110 feet, or three car-lengths, north of the junction of the McCarthy track with old track No. 1. Shortly prior to the time when defendant in error with his crew started south on the third main track to make the movement of the coal cars the shop yards crew had pushed a car in on the south end of the McCarthy track. There were already six cars standing on this track, and when this seventh car was pushed in from the south the flat-car at the north end of the string was pushed so far north that its northeast corner was about eighteen inches from the west rail of old track No. 1. This left but a bare clearance for cars passing along old track No. 1, and made it impossible for anyone hanging on the side of a car passing on old track No. 1 to clear the flat-car at the north end of the McCarthy track. Defendant in error, with his engine and crew, came south on the third main track. As to just where he alighted from the engine there is a conflict in the testimony of defendant in error's witnesses. The switchman, Snyder, testified that both he and defendant in error alighted from the switch engine south of the north switch connection of the McCarthy track

with old track No. 1, which would take them beyond the
flat-car at the north end of the string of cars on the Mc-
Carthy track, and that both he and defendant in error saw
the position of this flat-car and estimated its distance from
the west track of old track No. 1. Defendant in error tes-
tified that he alighted from the switch engine immediately
opposite the south end of the string of coal cars on old
track No. 1, which would be, as he estimated it, three car-
lengths north of the junction of the McCarthy track with
old track No. 1. Defendant in error admits that he looked
towards the south when he alighted from the engine but
denies that he saw the position of the flat-car at the north
end of the McCarthy track. He then inspected the string
of cars on old track No. 1 and selected the five cars which
were to be taken to the chutes. In the meantime the en-
gine, with the third switchman, had proceeded south be-
yond the junction of old track No. 1 with the third main
and had backed up on old track No. 1, passing the cars on
the McCarthy track, and had coupled to the string of cars
which were involved in the movement to the coal chutes.
After the coupling had been made defendant in error gave
the signal to go ahead, and he admits that he again looked
towards the south but denies that he saw the position of
the north car on the McCarthy track. Snyder swung onto
a car about the middle of the string and took a position
between two of the cars, standing on the end-beams. The
defendant in error waited until the last car of the string
reached him. This car was of the class known as steel
hopper-cars. Defendant in error swung onto the front end
of this car and sat on the side-beam of the car, under the
sloping end of the hopper, with his legs hanging over the
west side of the car. An iron support extended from the
corner of the car to the upper edge of the hopper, which
obstructed his view to some extent in looking forward
along the west side of the cars. After seating himself in
this position defendant in error took the cards containing

his written orders from his pocket and began to read them. Snyder, who was several car-lengths ahead of defendant in error, noticing the position of defendant in error and the probability that he would be injured by the flat-car on the McCarthy track, called to him and whistled to attract his attention. Snyder testified that after he had thus called, defendant in error glanced up at him and then resumed reading his orders. Defendant in error denies that he heard Snyder's warning or that he looked in his direction. A witness, Mohrle, who was working on a scrap-pile west of the McCarthy track, was attracted by the shouts of Snyder and the noise occasioned by the grab-irons on the coal cars bumping against the flat-car, and, noticing the perilous position of defendant in error, shouted to attract his attention. Defendant in error heard this warning and looked up when he was within a few feet of the McCarthy track, and seeing the danger attempted to save himself by throwing his body backward and raising his legs. He was too late to avert the injury and both of his legs were caught and badly crushed, resulting eventually in the right leg being amputated below the knee and the left leg becoming practically useless. The testimony further tends to prove that it was the custom in these yards to so place cars upon the switches near the junction with other tracks that they would clear anyone hanging to the grab-irons on the side of passing cars, and that it was also the custom when any member of a switching crew observed a dangerous condition which was likely to result in injury to other members of the crew to immediately warn the other members of the crew of the danger.

The contention of plaintiff in error is that the injury was caused by the negligence of the fellow-servants of defendant in error; that defendant in error assumed the risk of such injury in his employment, and that the injury was the result of contributory negligence, and for these reasons

insists that the peremptory instruction directing a verdict for plaintiff in error should have been given to the jury.

It cannot be disputed that the members of the switching crew of which defendant in error was foreman were fellow-servants of defendant in error, but the only negligence which could be attributed to any member of that crew would be the failure to warn defendant in error of the dangerous condition occasioned by the placing of the flat-car on the McCarthy track too close to the rail of old track No. 1. Such negligence, if any, was not, however, the sole cause of the injury, but merely concurred with the negligence of the members of the shop yards crew in placing the car at the north end of the McCarthy track too close to old track No. 1. Under such circumstances, the fact that the members of the switching crew of which defendant in error was foreman were negligent in failing to warn defendant in error of the danger would not relieve plaintiff in error of liability unless the members of the shop yards crew were also fellow-servants of plaintiff in error. (*Chicago and Northwestern Railway Co.* v. *Gillison,* 173 Ill. 264; *Klofski* v. *Railroad Supply Co.* 235 id. 146.) It cannot be successfully contended that defendant in error was directly co-operating with the members of the shop yards crew in the particular business in which he was engaged at the time he was injured, nor does it appear as a matter of law, from the facts appearing in the record, that the usual duties of defendant in error and the members of the shop yards crew brought them into habitual association so that they might exercise a mutual influence upon each other promotive of proper caution. Whether the members of the shop yards crew and defendant in error were fellow-servants was therefore a question which the court properly submitted to the jury for determination. *Hartley* v. *Chicago and Alton Railroad Co.* 197 Ill. 440; *Aldrich* v. *Illinois Central Railroad Co.* 241 id. 402.

As to the question of assumed risk, the law in this State is that when one engages in an employment he will be presumed to have contracted with reference to the usual and ordinary risks incident to such employment and to have assumed the same. (*Chicago and Eastern Illinois Railroad Co.* v. *Heerey*, 203 Ill. 492.) In cases of this kind the question whether the injured person assumed the risk is usually one of fact. In this case the testimony of defendant in error tended to prove that it was customary to place cars in the clear, so that there would be room for a man to hang on the side of a passing car without encountering danger. It was for the jury to say whether such was the custom, and whether defendant in error was justified in relying upon this custom or assumed the risk of being injured in this manner as an incident of his employment.

Whether the injury received was the result of contributory negligence of the defendant in error was also, under the state of this record, a question of fact for the jury. It was not negligence *per se* for him to ride on this car in the manner in which he did. The testimony on his behalf tended to prove that such was the customary place for a switchman to ride in making a switching movement with this kind of car. Defendant in error testified that he did not, at any time before the moment of his injury, see the cars on the McCarthy track or observe the position of the flat-car at the north end of that string of cars. Whether, under all the circumstances, he exercised that degree of care which devolved upon him was for the jury to determine under proper instructions.

The motion for a directed verdict was properly refused.

Complaint is made that the court improperly excluded testimony of the engineer of the switching crew of defendant in error. The questions to which objections were sustained called for the conclusion and opinion of the witness as to whether defendant in error was likely to be injured if he did not change his position. The witness was

permitted to testify to all the facts and circumstances and as to the position of the flat-car on the McCarthy track. Objections to these questions were properly sustained. The plaintiff in error offered to prove by this witness that he gave no warning to defendant in error and did not stop his engine because it is frequently the case that switchmen, in performing their duties, are in places of danger from which they remove themselves in apt time and that switchmen take those chances; that the witness assumed that the defendant in error could see what he (the witness) saw; that he was working under the signal that had been given by defendant in error, and he supposed defendant in error would change his position before reaching the car on the McCarthy track. This evidence was clearly incompetent and objection to the offer was properly sustained.

The court refused to give the following instruction offered by plaintiff in error:

"You are instructed by the court that under the law all of the members of the switching crew of which plaintiff was foreman were fellow-servants, and if you believe, from the evidence, that the negligence of any other member or members of that crew was the proximate cause of the injuries of which the plaintiff now complains, then he has no cause of action against the defendant, and in such case your verdict should be in its favor."

Under the proof in this case it was for the jury to determine whether the injury was caused by the negligence of the crew of which defendant in error was foreman, or of the shop yards crew, or by the concurrent negligence of both crews. This instruction leaves out of consideration the possibility that the jury might determine that the injury was the result wholly of the negligence of the shop yards crew or of the concurrent negligence of both crews. The law is well settled that if an injury result from the negligence of the master combined with that of a fellow-servant, and the injury would not have happened had the

master observed due care for the safety of the injured servant, the master is liable. (*Chicago and Northwestern Railway Co.* v. *Gillison, supra; Klofski* v. *Railroad Supply Co. supra; Armour* v. *Golkowska,* 202 Ill. 144; *Kennedy* v. *Swift & Co.* 234 id. 606; *Yarber* v. *Chicago and Alton Railway Co.* 235 id. 589.) This instruction was properly refused.

Three other instructions, which told the jury, in substance, that an employer is not responsible for injuries to employees which are occasioned by the carelessness or negligence of fellow-servants while acting in the same line of service, were refused. The definition of fellow-servants is for the court. Whether employees of the common master fall within that definition is a question of fact for the jury. (*Hartley* v. *Chicago and Alton Railroad Co. supra; Slack* v. *Harris,* 200 Ill. 96; *Illinois Southern Railway Co.* v. *Marshall,* 210 id. 562; *Bennett* v. *Chicago City Railway Co.* 243 id. 420.) No instruction was offered or given defining fellow-servants, and without such instruction it was not error to refuse these three instructions, which, in effect, simply informed the jury that the defendant in error could not recover for injuries caused by the negligence of a fellow-servant. *Whitney & Starrette Co.* v. *O'Rourke,* 172 Ill. 177; *Chenoweth* v. *Burr,* 242 id. 312.

In his closing argument to the jury counsel for defendant in error, after giving a vivid description of the perils which constantly threaten one engaged in the employment of a switchman, and after discussing the defenses interposed by the plaintiff in error, made the following statement to the jury: "I say to you the time will come in this country, and in this civilization, when the rule of fellow-servants, and the rule of assumed risk, and contributory negligence, will be relics of barbarism and will no longer disgrace our law." This statement was objected to as improper, whereupon the court ruled as follows: "It is not proper to state that, and should not be considered; what

the law is now he can state, but otherwise the remarks are improper." Counsel for defendant in error then said: "It is not the law now; I have the right to express my opinion of the law if I do not attempt to mislead the jury as to what is, in fact, the law, nor seek to induce them to refuse to follow the law;" to which the court responded: "It is not proper for counsel to express their opinion as to the wisdom and propriety of the law applicable in this case." It is now insisted that the court erred in refusing to grant a new trial because of this improper appeal to the jury to disregard the law. These remarks were highly improper. Our law recognizes the defenses which were interposed in this case by plaintiff in error, and it had the right not only to defend upon these grounds, but to insist that its defenses should receive a fair and unbiased consideration. Whether this portion of our laws is barbaric and a disgrace to our civilization, and its administration results in a miscarriage of justice, cannot concern courts or juries so long as it remains the law. Courts are constituted to administer the law as they find it, and it is the duty of juries to return their verdicts in accordance with the law and the facts. If, in fact, our laws are in any respect barbarous or disgraceful there is but one forum to which an appeal can be made. Juries called to determine the issues involved in suits at law have no power to remedy the defect. In this case the question whether defendant in error was guilty of contributory negligence was exceedingly close. If the jury believed the testimony of Snyder as to the matters wherein he was contradicted by defendant in error then their verdict must have been for plaintiff in error, as Snyder's testimony clearly shows that the injury was the result of the negligence of the defendant in error. On the question of contributory negligence the case depended entirely on the credibility of the witnesses. In justice to both parties it was essential that the jury be impartial and that it be left free to determine the matters

in controversy without any appeal to the passion or prejudice of its members. The defendant in error was seriously and permanently injured and his condition was such as to incite pity. The language of counsel could have been used for no other purpose than an appeal to the jury to disregard the defenses interposed. After the objection to the remarks was sustained, counsel insisted upon his right to thus criticise the law. The injury done was not lessened by the intimation of counsel that he was not seeking to induce the jury to refuse to follow the law.

There are many cases in this and other jurisdictions where the courts have been called upon to determine the effect of the misconduct of counsel in the argument of a case, but it will not be necessary to review them. In the recent case of *Appel* v. *Chicago City Railway Co.* 259 Ill. 561, we reversed the judgment of the lower court for the misconduct of counsel, and in passing upon the question we said: "In a clear case, however, this court will reverse a judgment because of the improper conduct of counsel, and has reversed judgments because of prejudicial statements of counsel even though the trial court has sustained objections to such statements, rebuked counsel and directed the jury to disregard the statements. (*Wabash Railroad Co.* v. *Billings,* 212 Ill. 37; *Chicago Union Traction Co.* v. *Lauth,* 216 id. 176.) The rule in this State must be regarded as settled that misconduct of counsel of the character mentioned is sufficient cause for reversing a judgment unless it can be seen that it did not result in injury to the defeated party. The questions to be determined are, therefore, whether the improper argument was of such a character as was likely to prejudice the defendant, and if so, was the verdict so clearly right that a new trial ought not to be granted because of such prejudicial argument." That the argument here was of such a character as to be likely to prejudice plaintiff in error cannot be questioned, and it

is impossible to say that the verdict is so clearly right that a new trial ought not to have been granted.

Under the authority of the *Appel case, supra,* the trial court should have granted a new trial because of the prejudicial argument of counsel, and for this error the judgment of the Appellate Court is reversed and the cause remanded to the circuit court for a new trial.

*Reversed and remanded.*

FARMER, C. J., and CRAIG, J., dissenting.