# Alice Eilers by Tillie Eilers, Appellee, v. Peoria Railway Company, Appellant.

## Gen. No. 6,250.

1. CARRIERS, § 480*—*when contributory negligence of passenger after alighting from street car for jury.* In an action for personal injuries sustained by a passenger on a street car who, after alighting, passed behind the car and was struck by another car coming from the opposite direction to that in which the car from which she had alighted was going, the question of contributory negligence on the part of the plaintiff *held*, on the evidence, properly submitted to the jury.

2. NEGLIGENCE, § 228*—*when instructions on degree of care incorrect.* In an action for personal injuries, instructions as to the degree of care required of a person who finds himself in a position of danger, *held* to improperly confine the jury's attention to what the plaintiff did after she found herself on a street car track where she was injured.

3. CARRIERS, § 482*—*when instruction bad as invading province of jury.* In an action for personal injuries sustained by a passenger being struck by a street car after alighting from another car going in the opposite direction, an instruction that a pedestrian has a right to expect that a street railway company will not run a car past a car discharging passengers and without giving warning and observing the ordinances of the city governing the operations of cars, *held* bad as deciding, as matter of law, a question of fact.

4. DAMAGES, § 186*—*when evidence as to extent of personal injuries inadmissible.* In an action for personal injuries, testimony of a physician that it was likely that there would be a gradual increasing of the plaintiff's irritability—"Probably some abnormal mental condition later on will develop," *held* improperly admitted as amounting to a mere probability that such effect would result.

5. DAMAGES, § 213*—*when instruction on computation of damages for loss of future earnings erroneous.* In an action for personal injuries, an instruction that, in estimating damages for loss of future earnings, the jury might consider the facts and circumstances in proof in connection with their knowledge, observation and experience in the ordinary affairs of life, *held* erroneous.

6. CARRIERS, § 482*—*when instruction on duty of passenger to keep lookout for cars confusing.* In an action for personal injuries

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

resulting from the plaintiff's being struck by a street car, after alighting from another car going in the opposite direction, an instruction to the effect that it was as much the duty of the plaintiff as of the motorman to keep a lookout, and that if the plaintiff did not keep such a lookout the defendant should be found not guilty, *held* confusing in not stating what kind of a lookout was required of the plaintiff.

7. STREET RAILROADS, § 91*—*what lookout must be maintained by pedestrian crossing tracks.* A pedestrian crossing a street car track is required to keep such a lookout as ordinarily prudent people would do under similar circumstances.

8. TRIAL, § 124*—*when remarks of counsel ground for reversal.* In an action for personal injuries against a street car company where the plaintiff's attorney made remarks of a nature to influence the passions and prejudice of the jury, the judgment was reversed.

9. DAMAGES, § 179*—*what admissible on question of loss of future earnings.* In an action for personal injuries, proof of a contract of the plaintiff for future employment, *held* admissible on the question of loss of future earnings.

Appeal from the Circuit Court of Peoria county; the Hon. CLYDE E. STONE, Judge, presiding. Heard in this court at the April term, 1916. Reversed and remanded. Opinion filed August 10, 1916.

PAGE, HUNTER, PAGE & DALLWIG, for appellant.

JOHN B. KING and LEO G. HANA, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

Alice Eilers, the appellee, a girl seventeen years old, was in the nighttime a passenger on a southbound street car of the appellant company in the City of Peoria. As the car stopped, according to its custom, at the far side of an intersecting street, she alighted from the rear and after it started walked diagonally across the track on which she had been riding and an intervening space between that track and appellant's northbound track, and as she stepped upon the northbound track was struck and injured by a northbound car.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

She, by her next friend, brought this action to recover for that injury alleging, as defendant's negligence in different counts of her declaration, careless and negligent management of the defendant in running its cars. A violation of a city ordinance requiring conductors and drivers of street railway cars to keep vigilant watch for all persons on the track, and at the first appearance of danger to such persons to stop the car in the shortest time and space possible. A violation of another ordinance requiring street cars to be provided with signal lights and equipped with a gong or other suitable device to be sounded or rung at least one hundred feet from where the track intersects any other street and kept sounding or ringing until such street is reached, and that the northbound car by which she was injured approached the street intersection in a careless manner. There were other appropriate allegations in the declaration showing the facts before stated and alleging due care and caution of the plaintiff in alighting from the car and attempting to cross the northbound track of the defendant, and alleging permanent physical injury resulting in pain and sickness and prevention from transacting her affairs and business which before that time had engaged her attention. She had a judgment on a verdict of $3,350, from which the company prosecutes this appeal.

Appellant first contends that this is a plain case of contributory negligence. The argument supported by the evidence is that appellee might have seen and avoided the danger. This is true in most grade crossing accidents. Usually it is easy to demonstrate that a greater degree of care would have saved the plaintiff from injury, still, the question is whether the degree of care exercised by the plaintiff was such as would ordinarily be used by prudent persons under similar circumstances, and unless there is but one reasonable conclusion the question must be left to the jury as one of fact, subject to the supervision and review of the

trial judge and of this court. We are of the opinion that this record presents a case where the court did not err in refusing to direct a verdict for the defendant. As the judgment must be reversed for reasons hereinafter stated, we express no further opinion as to the weight of the evidence.

The jury were told in the first of appellee's given instructions, if the plaintiff at the time in question was in the exercise of ordinary care for her own safety and the defendant was guilty of negligence as charged, etc., then the verdict should be for the plaintiff. And in appellee's second given instruction that there is no rule of law which prescribes any particular act to be done or omitted by a person who finds herself in a place of danger that will constitute ordinary care; that the only requirement of law is that her conduct at such time should be consistent with what a person of ordinary prudence would do under like circumstances. The main inquiry on the question of plaintiff's care was whether she was in the exercise of ordinary care in placing herself on the northbound track. Appellant argues that these instructions, taken together, ignore that question and confine the jury's attention to what plaintiff did after she found herself in danger on the track. There is some force in this criticism, and the instructions in that respect should be more carefully guarded on another trial. Numerous authorities are cited by counsel on each side holding that character of instruction good and bad. Whether good or bad in any given case depends largely upon the facts of that case, and whether it is likely from a consideration of the facts and the other instructions the jury's attention might have been improperly confined to the conduct of the plaintiff after she found herself in danger, to the exclusion of the inquiry of the propriety of her placing herself in danger. Appellee's fourth given instruction told the jury that a pedestrian has a right to expect that a street railway company will not run a car past a car discharg-

ing passengers without giving warning and observing the ordinances of the city governing the operation of cars, if any. This instruction was bad in deciding as matter of law a question of fact. (*Louisville, N. A. & C. Ry. Co. v. Patchen,* 167 Ill. 204; *North Chicago St. R. Co. v. Irwin,* 202 Ill. 345; *Brun v. P. Nacey Co.,* 267 Ill. 360.) Appellee's fifth given instruction was to the effect that if the jury found the defendant guilty, then in assessing damages they might take into consideration bodily disability occasioned by the accident and any impairment of the plaintiff's mental faculties and general health proven which the jury believe from the evidence will affect or impair her future ability to attend to her ordinary affairs of life the same as if the injury complained of had not occurred. The evidence on which the theory of permanent impairment of mental condition rested was that of a physician that it was likely that there would be a gradual increasing of appellee's irritability—"Probably some abnormal mental condition later on will develop." Under the authority of *Amann v. Chicago Consol. Traction Co.,* 243 Ill. 263, 267; *Lauth v. Chicago Union Traction Co.,* 244 Ill. 251, and *Lisenbury v. St. Louis & S. Ry. Co.,* 184 Ill. App. 395, this evidence of what was "likely and probable" (which was objected to) was improperly admitted and its effect emphasized by the giving of this instruction. Appellee's seventh given instruction told the jury, among other things, if they believed plaintiff sustained damages as charged in the declaration, that in estimating damages for permanent injury or for pain and suffering: "It is not necessary that any witness should have expressed an opinion as to the amount of such damages, but the jury may, themselves, make such estimate from the facts and circumstances in proof, and by considering them in connection with their knowledge, observations and experience in the ordinary affairs of life." One item of damages charged in the declaration is plaintiff's inability to attend to the

ordinary affairs and business which prior to that time had engaged her attention. Appellee proved the rate of her earnings immediately before the time of the injury and a contract as to future earnings. Damages assessed on this item of loss of future earnings must have been based on evidence and not on the jury's knowledge, observation and experience in the ordinary affairs of life; therefore this instruction was erroneous. (*Elward v. Illinois Cent. Ry. Co.*, 184 Ill. App. 107.)

The court refused an instruction offered by appellant as follows: "You are further instructed that it was as much the duty of the plaintiff to keep a lookout for approaching street cars as it was the duty of the motorman of the street car testified about to keep a lookout for approaching persons, and if you believe from the evidence that the plaintiff failed to keep such a lookout and that such failure on the part of the plaintiff helped to bring about the injury testified about, then the plaintiff cannot recover and you should find the defendant not guilty." Appellant argues that the first part of the instruction informing the jury as to the relative duties of the plaintiff and the defendant in keeping a lookout is good law, and cites authorities to support that position. Assuming that to be so, we think the instruction bad in telling the jury if the plaintiff failed to keep such a lookout then she could not recover. It is not clear from that language what lookout the jury might presume was required as matter of law. The law required the plaintiff to keep such a lookout as ordinarily prudent people would do under similar circumstances. This instruction would not have aided them, and was properly refused on the ground that it might tend to confuse the jury if not on the ground that it was stating as matter of law what should be left to the jury as a question of fact.

Appellee's counsel in his closing argument to the jury charged appellant's counsel with stooping to rot-

ten methods to put up a defense in the case. The court sustained an objection to that statement. He then referred to appellant as a "gigantic octopus," that "You, the people of the City of Peoria, have permitted to wield its tentacles through your city streets," and added, "The least consideration it could pay you in return is to operate its cars according to the rule of law, which would have safeguarded this young girl as well as you and all the rest of this community." Again he said: "In determining the amount of damages to which this woman is entitled, and I ask you to consider well who are the parties. The defendant, our largest local corporation, operated, as it is,—counsel tried to tell you in his opening statement, purely in the interest of public welfare, with just probably now and then a credit, not to you and me, but to a select few who can afford to own its stock." The court sustained an objection to this statement. He then appealed to the jury to return a verdict extending the same measure of consideration to the plaintiff that they would ask if she were their sister or daughter, or other loved one invoking judgment at the hands of a jury, and added: "You need have no fear that your fellow citizens in Peoria County will accuse you of any dereliction of duty because you say by that returned verdict in behalf of this plaintiff, which will preserve and keep her in a moderate degree of comfort as her pitiable condition will permit." It is apparent that these suggestions were intended to inflame the passions and prejudices of the jury and direct their attention to considerations having no legal bearing on the questions submitted to them for decision. Cases are numerous where judgments have been reversed because of improper conduct and suggestions by counsel on the trial, and while as a rule the trial court should be left largely to judge of the influence of improper remarks and conduct and may obviate any evil effect therefrom by his rulings on objections to the same, still there are cases in which

the mischief is done beyond remedy by any ruling of the court. (*Wabash R. Co. v. Billings,* 212 Ill. 37, 41.) The Appellate Court of the Third District in *Illinois Cent. R. Co. v. Seitz,* 111 Ill. App. 242, well said:

"There is enough natural and inherent prejudice in the minds of jurors against railroad and other corporations without having it augmented by direct and improper appeals calculated to arouse the sympathy, passion or prejudice of jurors. A lawyer who tries his case in a proper manner, observing the ethics of the profession, is at a great temporary disadvantage when trying a cause against counsel who resort to improper language to obtain a verdict. Verdicts thus obtained generally are and always should be short-lived. Trial courts should set them aside as often as they are obtained. It is the policy of this court to discourage such misconduct on the part of lawyers by reversing judgments obtained by them when it is manifest they are the result of unprofessional conduct."

Great care is exercised in impaneling juries to obtain men free from prejudice that might bias their fair consideration of the facts upon which, as matter of law, their verdict should depend. If a juror on his *voir dire* were to admit that he had prejudices such as were sought here to arouse, he would not be permitted to sit in the case. The law is so careful in this respect that changes of venue are granted at much expense and inconvenience to parties and witnesses if necessary to avoid prejudice on the part of the jury against one of the litigants. The whole purpose of the law to obtain a trial by a fair and impartial jury is defeated if appeals to their passions and prejudices are to be permitted during the course of the trial. Reviewing courts have always consistently condemned such conduct and often reverse judgments for no other reason. Among the many cases illustrating this principle are the following: *Peoria, B. & C. Traction Co. v. Vance,* 234 Ill. 36; *Chicago Union Traction Co. v. Lauth,* 216 Ill. 176; *Appel v. Chicago City Ry. Co.,* 259 Ill. 561;

*McCoy v. Chicago & A. R. Co.,* 268 Ill. 244; *Chicago Union Traction Co. v. Wirkus,* 131 Ill. App. 485; *Chicago Union Traction Co. v. Faurot,* 136 Ill. App. 347; *Parlin & Orendorff Co. v. Scott,* 137 Ill. App. 454, and cases there cited; *Swinosynski v. Kelly Coal Co.,* 146 Ill. App. 120; *Upthegrove v. Chicago Great Western Ry. Co.,* 154 Ill. App. 460.

Appellee was permitted to prove a contract with her employer as to future wages in case of her contemplated continuing in his employment. This is urged as error by appellant, but we see no reason why not only the earnings of the plaintiff at the time of her injury but also the wages that she had contracted to receive in the future if she were not injured is not a proper subject of inquiry. The evidence is rather meagre as to this contract, and it is no doubt true if the supposed contract amounted to an offer that was not accepted or something short of a substantial contract for employment and increased wages it would not be competent evidence. For the errors before indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*