## Frank Ehrhardt, Appellee, v. Connecticut Fire Insurance Company, Appellant.

## Gen. No. 6,819.

1. TRIAL, § 174*—*what is effect of motion in nature of demurrer to evidence.* A motion to instruct the jury to find for defendant is in the nature of a demurrer to the evidence, and the testimony so demurred to, together with all reasonable inferences arising therefrom, must be taken most strongly in favor of plaintiff.

2. TRIAL, § 203*—*when refusal of motion to find for defendant is not error.* In an action on an insurance policy on a stallion, where there is evidence that the horse was, at noon of the day on which he died, and had been for several months before, in an apparently healthy condition; that the plaintiff found the horse lying dead in his stall immediately after a storm accompanied by much thunder and lightning; that there were no signs of struggle; that there was a mark on its forehead which veterinarians attributed to lightning; that a board on the barn was freshly split from top to bottom and a tree near the barn was split through the trunk with splinters on the cut; that a post-mortem by veterinarians disclosed organic symptoms such as are found in the organs of animals which have been struck by lightning, it was *held* that it was not error to refuse to instruct the jury to find for defendant.

3. EVIDENCE, § 381*—*what expert evidence is improper.* It is not proper to allow an expert to testify that in his opinion a thing is "reasonably probable," nor as to the "reasonably certain probable" cause of a condition.

4. EVIDENCE, § 387*—*what expert may testify to as to cause of injury or death.* When there is a conflict in the evidence as to whether or not an injury was received in the manner charged, it is not competent for witnesses, though testifying as experts, to give their opinion as to the cause of the disability or death, but when there is no dispute as to the cause or manner of the injury and no dispute that an injury was sustained, such witness may testify that a later malady or death was or was not caused by the accident or original injury.

5. EVIDENCE, § 387*—*what evidence as to cause of death is improper.* In an action on an insurance policy on a stallion, alleged to have been killed by lightning, where defendant contends that the death resulted from natural causes, it is not proper to permit

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

a witness, though testifying as an expert, to express his opinion as to the cause of the death.

6. INSTRUCTIONS, § 81*—*when instruction is erroneous as emphasizing fact.* An instruction as to the amount recoverable on an insurance policy for the death of a stallion, *held* erroneous as singling out and calling the jury's attention to plaintiff's evidence as to the value of the horse and ignoring defendant's evidence in regard thereto.

Appeal from the City Court of Aurora; the Hon. EDWARD M. MANGAN, Judge, presiding. Heard in this court at the April term, 1920. Reversed and remanded. Opinion filed June 29, 1920.

SEYMOUR EDGERTON, DAVID J. PEFFERS and ROBERT J. WING, for appellant.

JOHN M. RAYMOND and JOHN K. NEWHALL, for appellee.

MR. JUSTICE HEARD delivered the opinion of the court.

This is an action upon an insurance policy brought by appellee against appellant in the city court of Aurora. The policy insured appellee in the sum of $1,800 against loss, by lightning, of his stallion Damphin. The stallion was found dead in appellee's horse barn on the afternoon of Friday, April 4, 1919. A trial was had resulting in a verdict for appellee for $1,800, the full amount of the insurance upon the horse in question, and judgment was entered for appellee against appellant for this amount, from which judgment appellant prosecutes this appeal.

It is contended by appellant that the court should have instructed the jury to find for appellant.

There is evidence tending to show that about noon on the day in question, appellee took care of the horse, which at that time was in an apparently healthy condition and that he had been in such condition for several months prior thereto; that about 1:30 appellee

left home to get a load of corn; that while he was gone there was a storm accompanied by much thunder and lightning; that when he returned home he found the horse lying dead in the box stall in which he was kept, with no signs of struggle and with a mark on its forehead, which was attributed by veterinarians to lightning; that a board of the barn on the south side of the stall was freshly split from top to bottom; that a tree about 50 feet from the barn was split right down through the trunk with splinters on the cut; and that a post-mortem examination made by two veterinarians disclosed organic symptoms such as are found in the organs of animals which have been struck by lightning.

In *McCune v. Reynolds,* 288 Ill. 188, it was said: "A motion to instruct the jury to find for the defendant is in the nature of a demurrer to the evidence, and the rule is that the testimony so demurred to, together with all reasonable inferences arising therefrom, must be taken most strongly in favor of the plaintiff. (*Geiger v. Geiger,* 247 Ill. 629; *Lloyd v. Rush,* 273 Ill. 489.) * * * The question presented on a motion to withdraw an issue from the jury, as in this case, is whether there is any evidence fairly tending to prove the issues involved. *Yess v. Yess,* 255 Ill. 414."

Applying the rule above stated to this case we are of the opinion that there was evidence which together with the reasonable inferences arising therefrom fairly tended to prove all the material allegations of plaintiff's declaration, without basing a presumption upon a presumption and that the court did not err in refusing to instruct the jury for the defendant.

Three veterinarians gave expert medical testimony on behalf of appellee. Over the objection of appellant, counsel for appellee was allowed to ask these witnesses lengthy hypothetical questions terminating "from such a hypothetical case under these conditions, have you an opinion as to what was the reasonably certain probable cause of death?" and "from such a

hypothetical case under these conditions, have you an opinion as to what was the reasonable probable cause of death?'' Over appellant's objection, the witnesses were allowed to answer that the probable cause of death was lightning. Appellant contends that these questions were speculative and conjectural and therefore improper.

In 17 Cyc. 226, it is said: ''The judgment of an expert must be more than a guess. A tribunal that is called upon to decide a definite issue of fact by the use of the reasoning faculty cannot be aided where no mental certainty is shown by a witness. That a judgment is based upon conjecture shows that little or no aid can be given the jury on this point by witnesses, however skilled, and therefore evidence of it is rejected.''

In Webster's International Dictionary the word ''probable'' is defined as follows: ''Having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt; likely.'' In *Chicago City Ry. Co. v. Henry,* 62 Ill. 142, it was said: ''It is true, no one can determine with absolute certainty what the result of such an injury might be; but something more than mere conjecture, mere probabilities, should appear to warrant the giving of damages for future disabilities that may never be realized.''

In *Lyons v. Chicago City Ry. Co.,* 258 Ill. 75, it was said: ''While it is often difficult to draw the line between legitimate inferences and bare conjecture, only such inferences may be drawn as are rational and natural. (14 Encyc. of Evidence, 99, and cases cited.) Mere surmise or conjecture is never regarded as proof of a fact and the jury will not be allowed to base a verdict thereon. (14 Encyc. of Evidence, 76, and cases cited.) No one is permitted to testify to what he has never learned, whether it be ordinary or scientific facts. (*Elliott v. Van Buren,* 33 Mich. 49.) If a wit-

ness has not sufficient and adequate means of knowledge his evidence should not be considered. (Starkie on Evidence, 10th Am. Ed., 172.) A surgeon may testify as to the nature of a wound and as to the effects or consequences which may be reasonably expected to happen,—not mere speculative or possible. (1 Wharton on Evidence, sec. 441; Jones on Evidence. 2d Ed., sec. 378; 12 Am. & Eng. Encyc. of Law, 2d Ed., 447, and cases cited.) If it form a proper basis for recovery it is necessary that the consequences relied on must be reasonably certain to result. They cannot be purely speculative." In *Fellows-Kimbrough v. Chicago City Ry. Co.,* 272 Ill. 76, it was said: "Mere surmise or conjecture cannot be regarded as proof of an existing fact or of a future condition that will result. Expert witnesses can only testify or give their opinion as to future consequences that are shown to be reasonably certain to follow." To the same effect are *Amann v. Chicago Consol. Traction Co.,* 243 Ill. 263; *Lauth v. Chicago Union Traction Co.,* 244 Ill. 244; *Elward v. Illinois Cent. R. Co.,* 161 Ill. App. 630; *Lisenbury v. St. Louis & S. Ry. Co.,* 184 Ill. App. 395; *Eilers v. Peoria Ry. Co.,* 200 Ill. App. 487. We are of the opinion that it is not proper to allow an expert to testify that in his opinion a thing is "reasonably probable" or as to the "reasonably certain probable" cause of a condition, as such testimony falls far short of the reasonable certainty required by law.

It is also urged that these questions and others of a similar nature which over appellant's objections allowed the witnesses to express their opinions as the cause of the stallion's death were improper as calling for the opinions of the witnesses upon the ultimate facts of the case and invading the province of the jury.

For several years there was quite a little confusion in the trial courts on this subject occasioned by two lines of cases, apparently inconsistent, but not really so, one holding questions as to the causes of death,

somewhat similar to the one in this case, admissible, and the other line of cases holding the admission of such testimony to be reversible error.

In *Fellows-Kimbrough v. Chicago City Ry. Co.*, 272 Ill. 71, these two lines of cases were considered and the apparent inconsistency reconciled, and on page 77 it was said: "One of the objections of the plaintiff in error to the foregoing questions was that they were improper, as invading the province of the jury and calling for an opinion on an ultimate fact. Where there is a conflict in the evidence, as in this case, as to whether or not the party suing was injured in the manner charged, it is not competent for witnesses, even though testifying as experts, to give their opinion on the very fact the jury is to determine. Whether or not the collision or accident in this case caused traumatic neurasthenia in the defendant in error or caused the tumor in her breast are ultimate facts upon which the jury must make their findings. It is no more proper, legally, for physicians to settle those questions for the jury by their direct answers than it would be for a motorman of another street car company to settle the question of negligence by testifying in broad terms that the plaintiff in error was guilty of negligence because its motorman failed to cut off the power by use of the canopy switch in time to prevent the collision. The rule in such cases is not different where hypothetical questions are put to the expert witnesses. A physician may be asked whether the facts stated in a hypothetical question are sufficient, from a medical or surgical point of view, to cause and bring about a certain condition or malady, or he may be asked whether or not a given condition or malady of a person may or could result from and be caused by the facts stated in the hypothetical question, but he should not be asked whether or not such facts did cause and bring about such condition or malady. (*Illinois Cent. R. Co. v. Smith*, 208 Ill. 608; *Keefe v. Armour & Co.*, 258 Ill.

28; *People v. Schultz*, 260 Ill. 35; *Castanie v. United Rys. Co.*, 249 Mo. 195, 155 S. W. Rep. 38; *Sever v. Minneapolis & St. L. R. Co.*, 156 Iowa 664, 137 N. W. Rep. 937, 44 L. R. A. (N. S.) 1200. In cases where there is no dispute as to the manner and cause of the injury and no dispute that there was an injury sustained by reason of the acts of which complaint is made, this court has held that a physician may then directly testify that a later malady was or was not caused by the accident or original injury, upon the same principle that he may testify that death resulted from a certain wound. *Schlauder v. Chicago & Southern Traction Co.*, 253 Ill. 154; *City of Chicago v. Didier*, 227 Ill. 571.''

This rule announced in the language just quoted that when there is a conflict in the evidence as to whether or not the party suing was injured in the manner charged, it is not competent for witnesses, even though testifying as experts, to give their opinion as to the cause of disability or death, but that when there is no dispute as to the cause and manner of the injury and no dispute that an injury was sustained, that such witness may testify that a later malady or death was or was not caused by the accident or original injury, was followed by the Supreme Court in the later cases of *Heineke v. Chicago Rys. Co.*, 279 Ill. 210; *Squire-Dingee Co. v. Industrial Board*, 281 Ill. 359; *Hanrahan v. City of Chicago*, 289 Ill. 400, and by this court in the case of *Holcomb v. Magee*, 217 Ill. App. 272. Appellant observed this rule as the termination of its hypothetical questions.

In the present case appellant did not admit the manner of injury, but strenuously insisted that the stallion was not injured at all, but died from natural causes, and we must therefore hold, applying the above rule to the question here involved, that the court improperly admitted the evidence in question.

At the request of plaintiff the court gave the jury

the following instruction: "The court instructs the jury that if you believe from a preponderance of all the evidence under the instructions of the court that the plaintiff was the owner of the horse in controversy in this suit; that said horse was insured by the defendant Company in the sum of Eighteen Hundred Dollars ($1800.00); that said horse was killed by lightning, as alleged in plaintiff's declaration, and that due proofs of loss were made and delivered to the defendant in the manner and within the time provided for by the policy offered in evidence in this case; and that the actual fair cash market value of the horse at the time of its death was Eighteen Hundred Dollars ($1800), or more than that amount, if shown by a preponderance of the evidence; then your verdict should be for the plaintiff for the sum of Eighteen Hundred Dollars ($1800.00)."

Appellee introduced evidence to the effect that the stallion was worth more than $1,800, while appellant introduced evidence to the effect that it was only worth from $150 to $400. The instruction was erroneous in ignoring appellant's evidence and singling out and calling the jury's attention to appellee's evidence and in three times calling the attention of the jury to the specific amount of $1,800.

For the errors above indicated the judgment of the city court of Aurora will be reversed and the cause remanded.

*Reversed and remanded.*