ADAM LAUTH, Appellee, *vs.* THE CHICAGO UNION TRACTION COMPANY, Appellant.

*Opinion filed February 16, 1910—Rehearing denied April 6, 1910.*

1. EVIDENCE—*when evidence of nervousness and mental condition of plaintiff is properly admitted.* In a personal injury case, non-expert witnesses who have known the plaintiff both before and after the injury, and who have observed his actions, not with a view to testifying but as they have met him from time to time, socially or in a business way, at his home or on the street, may testify to the manifestations of his nervous and mental condition at such times. (*Greinke v. Chicago City Railway Co.* 234 Ill. 564, and *Shaughnessy v. Holt,* 236 id. 485, distinguished.)

2. SAME—*changed condition of plaintiff since injury may be shown by his acquaintances.* Whether the plaintiff in a personal injury case is in the enfeebled condition claimed and whether such condition is the result of his injury are questions for the jury to determine from the evidence, and it is proper to prove by persons who have observed his condition, demeanor and conversation through the years both before and after the injury, what, if any, change they have observed in him since the injury.

3. NEGLIGENCE—*future consequences of injury must be reasonably certain to result.* Where permanent injury is claimed, it is proper, in estimating the pecuniary loss, to take into consideration future consequences of the injury as well as past; but such future consequences must be shown by the evidence to be reasonably certain to result, and they cannot be purely speculative.

4. SAME—*possibility of death from strangulated hernia is too remote.* The admission of evidence that the hernia which plaintiff claims was caused by his injury might become strangulated at any time, without premonition, and if the strangulation was not reduced that death would ensue, is error, where it appears that such strangulation was not a condition peculiar to the plaintiff's hernia but was likely to occur with any hernia, and that in the case of the plaintiff strangulation had occurred several times and been reduced, sometimes by physicians and sometimes by himself.

5. REMITTITUR—*when remittitur does not cure error in admitting evidence.* If error has been committed as to some substantial fact which bears upon the right of recovery or upon the measure of damages in some respect which is not susceptible of computation, such as the admission of improper evidence authorizing an award of damages for mental anguish suffered on account of impending death, a *remittitur* will not cure it.

6. WITNESSES—*the plaintiff's testimony cannot be discredited merely because he is the plaintiff.* While the jury have the right, in weighing the plaintiff's testimony, to consider that he is the plaintiff and interested in the result of the suit, yet they have no right to discredit his testimony from caprice or merely because he is the plaintiff.

FARMER, C. J., and VICKERS, J., dissenting.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. ALBERT C. BARNES, Judge, presiding.

JOHN A. ROSE, and FRANK L. KRIETE, (W. W. GURLEY, of counsel,) for appellant.

HARVEY E. WYNEKOOP, and JOEL BAKER, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

On the morning of August 28, 1900, a street car owned and operated by the Chicago Union Traction Company, the appellant, collided, on Lake street, in the city of Chicago, with a surrey in which Adam Lauth, the appellee, was riding, whereby he was thrown to the street and injured. He brought an action of trespass on the case in the superior court of Cook county to recover damages for the injuries thus sustained. A trial was had before a jury, which resulted in a verdict for the plaintiff for $15,000, and judgment was entered for that amount. The traction company prosecuted an appeal to the Appellate Court for the First District. The appeal was heard in the branch court, and, after requiring appellee to remit $5000, that court affirmed the judgment of the superior court for $10,000. The traction company prosecuted a further appeal to this court, and upon a hearing here the judgments of the Appellate and superior courts were reversed and the cause was remanded to the superior court. (*Chicago Union Traction Co. v.*

*Lauth,* 216 Ill. 176.)   A second trial was had in the superior court before a jury, which resulted in a verdict finding defendant guilty and assessing plaintiff's damages at $20,000.  · The trial court required appellee to remit $7500, and, after overruling appellant's motions. for a new trial and in arrest of judgment, entered judgment on the verdict for $12,500.   The traction company prosecuted an appeal from this second judgment of the superior court to the Appellate Court for the First District. · The judgment of the superior court was there affirmed, and appellant has prosecuted a further appeal to this court.

Inasmuch as the alleged errors relied upon by appellant for reversal upon this appeal could not have contributed to the finding of the jury that appellant was guilty of the negligence charged. against it or that appellee was in the exercise of due care at the time he was injured, but could only have affected the amount of damages awarded to appellee by the verdict of the jury, the opinion of this court rendered upon the former appeal of this cause sufficiently shows the manner in which the injuries were occasioned for a proper consideration of the questions presented upon this appeal.

As bearing upon the question of damages, appellee introduced evidence which tended to show that he sustained a fracture of the fibula of the left leg and an injury to the knee which developed into a chronic synovitis of the left knee joint and a stiffness and limitation of motion in that joint, and which has ever since, at frequent intervals, caused him great pain; that as a result of an injury to the right groin sustained at the same time, a complete inguinal hernia developed in that groin within three or four days after the accident, which has on several occasions become strangulated, and that other ailments, including constipation, indigestion, insomnia, neurasthenia, cerebrasthenia and incipient dementia, and a complete inguinal hernia in the left groin, have followed, all resulting from the injuries

received on August 28, 1900. The hernia in the left groin developed four or five years after the accident.

Appellant introduced the testimony of medical experts tending to show that a complete inguinal hernia could not be produced in three or four days, and that therefore the hernia in the right groin could not have resulted from or been occasioned by the accident in question; that it required months for a complete inguinal hernia to develop, and that the discovery of a complete hernia within three or four days after the injury showed that it had existed prior to the accident; and that the hernia in the left groin did not result from the injuries received. The testimony of appellant's expert witnesses also tended to show that the synovitis and stiffness of the left knee joint could be cured by proper treatment without resort to a surgical operation.

Appellee introduced evidence that prior to the time of the accident he was a strong, healthy, robust man; that he took an active part in athletics; that he was not nervous or excitable, had a good memory, talked intelligently and collectedly, could concentrate his mind upon a subject and converse for hours at a time upon a single topic, and applied himself industriously to his business affairs; that since receiving his injuries there has been a radical change in him; that he appears to be sick and lame, walks with a limp, using a cane for support, and frequently appears to suffer great pain; that his face appears at times flushed, at other times pale; that his eyes frequently twitch and his face appears drawn; that he is irritable and excitable; that at times he is in exuberant spirits and at other times he is despondent and melancholy; that he will not sit still in one place very long, and is fidgety and always moving around; that when he starts to read an article in a newspaper he throws the paper down before finishing the article; that he appears to be very nervous and his memory has become poor; that at times he is taciturn, at other times voluble in his talk; that he is at times very effusive

in greeting his acquaintances, at other times the reverse; that his conversation is often disconnected; that he will often talk upon several subjects at once and during the course of a conversation changes the topic very often; that he lacks the power of continuity, and does not appear to be able to concentrate his mind upon any subject or pursue any line of investigation requiring mental exertion. These observations were made by relatives and acquaintances of appellee who were called as witnesses in his behalf, and who frequently had social and business relations with him, both before and after the accident.

Appellee testified in his own behalf, and recounted with minute detail all that occurred on the day of the accident, from the time he left home in the morning until he was taken back in his injured condition. He testified fully and intelligently as to events occurring from that time until the time of the last trial, covering a period of almost seven years. He gave his business as that of an adjuster of personal injury claims. At the time of the trial he was maintaining an office and had maintained one continuously since the year 1899. In the prosecution of his business he interviewed persons who had sustained personal injuries and solicited them to contract with him to settle or prosecute their claims. He then employed attorneys, interviewed witnesses, watched the calendars of the various courts in which he had cases pending, attended the trials and actively assisted his attorneys, and, in general, had charge of all these cases, whether the same were settled or tried. He testified that at the time of the last trial he had thirty or forty, or probably more, such personal injury cases pending in the various courts of Cook county, and that he was giving the same his personal, active attention. His own testimony tends strongly to show that neither his mental nor physical activities have been seriously impaired.

Appellant first contends that the evidence in regard to the manifestations of the appellee's nervous and mental

ailments should not have been admitted, for the reason that such manifestations were purely subjective and wholly within the power of appellee to simulate, and urges that the business in which he was engaged was such as to discredit him. The theory of appellee is that his alleged nervous and mental condition was the direct result of the injury. After developing the facts by the testimony of non-expert witnesses, medical witnesses were called, and in response to hypothetical questions based on these facts and the extent of the injuries received at the time of the accident, each stated that in his opinion the nervous and mental condition of appellee was the direct result of the injury. We do not think the court committed any error in permitting this character of proof by non-expert witnesses. In support of its contention that this testimony was incompetent, appellant relies wholly on the cases of *Greinke* v. *Chicago City Railway Co.* 234 Ill. 564, and *Shaughnessy* v. *Holt*, 236 id. 485. An inspection of those cases will disclose the fact that entirely different questions were involved there. In each of those cases physicians made an examination of the plaintiff immediately prior to the trial and solely for the purpose of qualifying themselves to testify as experts to plaintiff's physical condition. In each case the physicians relied almost wholly on subjective conditions, and this court held that it was error to admit such testimony on the ground that it was self-serving, and, at best, but hearsay. In the *Greinke case, supra,* this court said, in discussing this matter: "It has also been held that witnesses who are not experts may express their opinions as to the physical condition of persons whom they have observed,—that is, they may state whether, in their opinion, such persons are in good health, have the ability to perform work, whether they are suffering pain, are conscious or unconscious, in possession of their mental faculties, etc.—*West Chicago Street Railway Co.* v. *Fishman,* 169 Ill. 196; *Cicero and Proviso Street*

*Railway Co.* v. *Priest,* 190 id. 592; *Chicago and Eastern Illinois Railroad Co.* v. *Randolph,* 199 id. 126." And again, in the same case: "Nor will he [the injured party] be presumed to feign disease, pain or distress under those conditions in which he is ordinarily observed by strangers or his friends and neighbors." The witnesses who testified to these conditions were all persons who had known appellee for a number of years, both before and after the time of the accident. Their observations were not made with a view of qualifying themselves as witnesses, but were made as they met him in a business way, socially, in his home and on the street. Whether appellee was in the enfeebled condition claimed, and, if so, whether it was the result of the injury, were questions for the jury to determine. It was proper to prove his condition by persons who had observed his physical condition, demeanor and conversation through the years both before and after the time of the injury, and to show by them what, if any, change they observed in him after he received the injury.

It is next contended by appellant that the court erred in admitting evidence as to the results which might be caused by a strangulated hernia. It appears that on two occasions, several weeks or months apart, Dr. Armstrong had treated appellee for strangulated hernia. On each occasion this occurred in the doctor's office, where appellee had gone for the treatment. The doctor, testifying on behalf of the appellee, described the conditions which cause strangulation, and testified that by simple methods he reduced the hernia and put the truss over it. He was then asked the following question: "Suppose a hernia is strangulated and it is not, as you call it, reduced or put back,—the intestine or bowel is not put back into the abdominal cavity but remains out through the ring,—what is the effect?" To which the witness was permitted to answer, over the objection of appellant: "The strangulation prevents circulation and causes destruction of that portion

of the bowel beyond that portion of the bowel where the strangulation occurs; mortification will come from want of nourishment and death will ensue." Appellant then moved to strike out the answer on the ground that it was purely speculative. The court stated that the question and answer were proper provided it was shown that strangulation was a condition that might repeat itself, and then asked the doctor whether a condition of strangulation is one which may occur with anyone who has an inguinal hernia. The witness replied that "any hernia may become strangulated at any time, without any premonition," whereupon the court denied the motion.

Appellee, in his own behalf, testified that his hernia had become strangulated on a number of occasions since he had been treated by Dr. Armstrong, but that having observed the methods used by the doctor on those occasions and by Dr. Cox when he had reduced the hernia, he was enabled, by using the same methods, upon each recurrence of the trouble to reduce the hernia himself without any assistance, medical or otherwise. In his closing argument to the jury counsel for appellee dwelt upon the liability of the recurrence of the strangulation, together with the attending possibility of death, as one of the elements for which damages should be allowed.

In this class of cases, in estimating the pecuniary loss, all the consequences of the injury, future as well as past, which are shown by the evidence to be reasonably certain to result from the injury, are to be taken into consideration. (*Wrisley Co.* v. *Burke,* 203 Ill. 250.) To form a proper basis for recovery, however, it is necessary that the consequences relied on must be reasonably certain to result. They cannot be purely speculative. (*Lake Shore and Michigan Southern Railway Co.* v. *Conway,* 169 Ill. 505; *Chicago and Milwaukee Electric Railway Co.* v. *Ullrich,* 213 id. 170; *Chicago City Railway Co.* v. *Henry,* 218 id. 92; *Amann* v. *Chicago Consolidated Traction Co.* 243 id.

263.) The rule is correctly stated in *Strohm* v. *New York, Lake Erie and Western Railroad Co.* 96 N. Y. 305, as follows: "Future consequences, which are reasonably to be expected to follow an injury, may be given in evidence for the purpose of enhancing the damages to be awarded, but to entitle such apprehended consequences to be considered by the jury they must be such as in the ordinary course of nature are reasonably certain to ensue. Consequences which are contingent, speculative or merely possible are not proper to be considered in ascertaining the damages. It is not enough that the injuries received may develop into more serious conditions than those which are visible at the time of the injury, nor even that they are likely to so develop. To entitle a plaintiff to recover present damages for apprehended future consequences there must be such a degree of probability, of their occurring as amounts to a reasonable certainty that they will result from the original injury." In discussing this question in *Chicago City Railway Co.* v. *Henry,* 62 Ill. 142, this court said: "It is true, no one can determine with absolute certainty what the result of such an injury might be; but something more than mere conjecture, mere probabilities, should appear to warrant the giving of damages for future disabilities that may never be realized."

It appears from the testimony of Dr. Armstrong that strangulation is likely to occur with any hernia at any time, without premonition. This was not a condition peculiar to the hernia with which appellee was afflicted. He was no more likely to have a recurrence of this condition than any other person suffering from hernia was to have the same become strangulated. Before death could result two contingencies must arise: First, the strangulation of the bowel; and second, the inability to reduce it. The first, considering the experience of appellee and the liability of all hernias to become strangulated, is quite probable, while

the second is a remote possibility. If any deduction is to be drawn from the testimony of the doctor and appellee himself, it is that the second contingency would not occur, as appellee would in all probability be able to reduce his hernia in the future as easily as he had in the past. There is not such a degree of probability that death will result from this injury as amounts to a reasonable certainty, and it was error to admit this testimony.

This error is not cured or in any way affected by the *remittitur* required by the superior court. It would be impossible to determine to what extent the verdict of the jury was influenced by this incompetent testimony, which opened the door for an award of damages for mental anguish suffered on account of impending death. The action of the trial court in requiring the *remittitur* is conclusive that the verdict was far in excess of the actual damages. Where an error has been committed as to some substantive fact which bears upon the right of recovery or the measure of damages in respect to some matter which is not susceptible of computation, a *remittitur* will not cure it.

The only other assignment of error relied on relates to a modification by the court of one of appellant's instructions. The instruction as asked was as follows:

"The jury are instructed that while the law permits the plaintiff in the case to testify in his own behalf, nevertheless the jury have the right, in weighing the evidence, to determine how much credence is to be given to it, and to take into consideration that he is the plaintiff and interested in the result of the suit."

The court modified it by striking out the word "nevertheless" and inserting after the word "behalf" the following: "The jury have no right to discredit his testimony from caprice or merely because he is the plaintiff." We think the instruction as modified properly stated the law, and there was no error in so giving it.

For the error indicated the judgments of the Appellate and superior courts will be reversed and the cause remanded to the superior court. *Reversed and remanded.*

FARMER, C. J., and VICKERS, J., dissenting.