## Dorothy L. Boss, by J. R. Boss, Appellee, v. Illinois Central Railroad Company, Appellant.

1. RAILROADS—*care exercised by child in crossing track.* Whether or not a child nearly 8 years of age, who instead of crossing before the approach of a train, as she probably could have done in safety, waited until the last coach had passed and was then struck by a train coming from the other direction, used such care as a child of her age should have used, was a question for the jury.

2. RAILROADS—*when question of wilfulness and wantonness properly submitted.* Where under the evidence the accident in question occurred at a crossing which was apparently the continuation of a public street, while defendant's train was running in excess of the speed ordinance, it was not error to submit to the jury the counts of the declaration based upon wilful and wanton negligence.

3. RAILROADS—*when wilfulness and wantonness questions for jury.* Violation of a speed ordinance at a railroad crossing which was so connected with and so apparently the continuation of a public street as to be regarded by ordinary citizens as located in a public street, was sufficient basis to justify the court in leaving it to the jury to determine whether or not plaintiff was injured by the wanton and wilful negligence of defendant.

4. RAILROADS—*necessity for notice of passage of "flagman ordinance."* Showing of notice to defendant railroad company of the enactment of a flagman ordinance was not a prerequisite to the admission of the ordinance in evidence.

5. RAILROADS—*duty to take notice of ordinance requiring flagman.* A railroad company was bound to take notice of a flagman ordinance and was bound by it, where it appeared that such ordinance had been passed and published more than 2 years before the happening of the accident for which the suit in question was brought.

6. RAILROADS—*when ordinance requiring flagman need not recite necessity.* A flagman ordinance was not required by its terms to find that it was necessary to place a flagman at the crossing in question, as a prerequisite to the submission to the jury of a count based upon such ordinance.

7. MUNICIPAL CORPORATIONS—*when record of ordinance insufficient to show passage.* Where the record of a flagman ordinance did not disclose what the motion was, and did not definitely describe the ordinance, such ordinance was not legally passed, and

it was therefore error to refuse to exclude it and peremptorily instruct the jury as to the count based thereupon.

8. WITNESSES—*when questions as to ill-feeling of strangers not witnesses improper.* It was error in a personal injury suit to permit plaintiff's attorney to ask defendant's witnesses whether a woman, who was not a witness, did not have an ill-feeling towards plaintiff's family.

9. EVIDENCE—*when testimony as to complaints by injured person improper.* It was error in a personal injury case to permit plaintiff's father to testify to complaints made by plaintiff long after the injury in question.

10. EVIDENCE—*when speculation as to future condition improper.* It was error in a personal injury case to permit a medical witness to testify, speculatively, as to the future results of plaintiff's injury to her mind and her sexual condition; and it was likewise error to permit plaintiff's father to testify along the same line.

11. DAMAGES—*speculative consequences.* Consequences which are contingent, speculative or merely possible, are not proper to be considered in ascertaining the damages in a personal injury case.

12. EVIDENCE—*when clinical record made by nurse since deceased improperly excluded.* The refusal to allow the introduction of the clinical record of a hospital was error where a physician had testified that he had obtained it from the bookkeeper at such hospital a few hours before he testified; that it was in the handwriting of a Sister who was a nurse at the hospital; that he had seen her write many times; and where it appeared that the Sister was dead.

13. EVIDENCE—*admissibility of bill of exceptions.* The bill of exceptions on a former appeal was improperly admitted in evidence at a subsequent trial for the purpose of showing that a notice of the passage of an ordinance in question had been given defendant's agent.

Appeal from the Circuit Court of Effingham county; the Hon. LOUIS BERNREUTER, Judge, presiding. Heard in this court at the October term, 1920. Reversed and remanded. Opinion filed March 30, 1921.

EDWARD C. CRAIG, DONALD B. CRAIG, FRED H. KELLY and PARKER & RICKELMAN, for appellant; JOHN G. DRENNAN, of counsel.

A. H. RANES, CORINNE L. RICE and PAUL TAYLOR, for appellee.

Mr. Justice Higbee delivered the opinion of the court.

This case was before this court at the March term, 1919, and is reported in 210 Ill. App., at page 668, to which we refer for a statement concerning the location and surrounding of the place where the injury occurred. The principal question involved, and the only one considered on the former appeal, was whether or not said place was a public crossing of the railroad. This court then held that the evidence introduced, with its reasonable intendments, was sufficient to require the railroad company to show that after an uninterrupted use of this crossing for 40 years, it was so used under some license, indulgence or special contract, inconsistent with the claim of right of the public; also that the evidence was at least sufficient to raise a presumption that the place in question was a public crossing, and called upon the railroad company to explain and show some reason why such use under the circumstances in proof did not constitute a prescriptive right. The second trial resulted in a verdict and judgment for appellee in the sum of $10,000 and this appeal has been taken to review the record there made. When the case was redocketed in the trial court, appellee filed an amended declaration consisting of twelve counts and later added another count which is referred to as the additional count.

The first point argued by appellant is that there was no evidence in the record showing that appellee was at the time of the accident exercising for her own safety the care that a child of her age, intelligence, experience, capacity and discretion should have exercised. At the time of the accident appellee was nearly 8 years of age. On her way home from school when she reached appellant's tracks a train was approaching thereon from the south. It seems that she could have probably crossed the track with safety before the train reached her, but that she waited and

started across the tracks just as the last coach passed her, and that as she stepped upon the track west of the track on which the northbound train was passing, an engine coming from the north struck her. Whether under all the circumstances appellee was or was not in the exercise of ordinary care for her own safety at and immediately prior to the time she was injured was a question to be properly left to the jury. Appellant next devoted a considerable portion of its argument to the question whether the place where the accident occurred was a public street and upon this question a large amount of evidence was introduced. We do not deem it necessary to go into the evidence on this question in detail, nor to say more than that we discussed this matter fully in our former opinion and that we still adhere to what was there said concerning the presumption established by the evidence, notwithstanding certain additional proof introduced on the last trial. It is next contended by counsel for appellant that the trial court should not have submitted to the jury the 8th, 10th, 11th and 12th counts of the amended declaration, and that the court erred in not giving to the jury as requested by appellant peremptory instructions as to these counts. These counts charged wilful and wanton negligence on the part of appellant and it is claimed by appellant that (a) each and all of them were insufficient; and (b) that there was no proof of any wilful misconduct on the part of the defendant. Appellant's contention in this behalf is based largely upon the theory that the place at which the accident happened is not a public crossing and therefore the violation of a speed ordinance is not evidence of wilful and wanton negligence. The accident occurred within the corporate limits of the City of Effingham, and the evidence clearly shows that the engine was traveling at a rate of speed in excess of the speed ordinance. If then, under the evidence, the accident occurred at a public crossing while ap-

pellant's servants were running in excess of the speed ordinance, it certainly was not error for the court to submit to the jury the counts in question. In *Wabash R. Co. v. Henks,* 91 Ill. 406, the Supreme Court said: "When an engine driver, at a street crossing, where he knows persons are constantly passing in large numbers, runs at a higher rate of speed than is allowed by law, he must intend the act, and, if so, it is wilful and cannot be regarded as mere carelessness. Or, where he passes such a place at a high rate of speed, knowing that almost certain injury must be inflicted on some one, it amounts to wilfulness and not mere carelessness."

Even though the evidence should be held to clearly show that Planters avenue as platted and laid out comes up to appellant's right of way on the west and continues from the east line of appellant's right of way on the east, yet under these circumstances this crossing was "so connected with a public street and so apparently the continuation of a public street as to be regarded by ordinary citizens as located in a public street." The language above quoted was used by the Supreme Court in *Lake Shore & M. S. Ry. Co. v. Bodemer,* 139 Ill. 596, where the accident which was the subject of the inquiry occurred between two public crossings and the train was being operated in violation of a city ordinance as to speed and without the ringing of a bell, the court saying this conduct tended to show such a gross want of care and regard for the rights of others as to justify the presumption of wilfullness and that it also tended to show that if there was failure to discover the danger of the deceased such failure was owing to recklessness of the company's servants in the management of its train. Following the rule laid down by the Supreme Court in that case, and using substantially the same language later used therein, we are unable to say that there was not evidence enough to justify the court in leav-

ing it to the jury to determine whether or not appellee was injured by the wanton and wilful negligence of the company. We are therefore of the opinion that the court committed no error in refusing to instruct the jury to find for appellee as to the 8th, 10th, 11th and 12th counts of the amended declaration, charging wilful and wanton negligence.

It is further insisted by appellant that the trial court erred in refusing to give peremptory instructions in its favor as to the 4th, 9th and 11th counts and the additional count. The 4th count alleged that appellant had failed to comply with an ordinance enacted by the authorities of the City of Effingham in 1902, requiring a flagman to be kept at Planters avenue, where the accident occurred. The 9th and 11th counts alleged that appellant violated an ordinance of the City of Effingham enacted in 1909 also requiring that a flagman be kept at Planters avenue. The additional count charged in general terms that appellant violated ordinances of the City of Effingham requiring that a flagman be kept at Planters avenue.

It is contended that the court erred in allowing the flagman ordinance of 1902 to be introduced in evidence and in permitting the counts based upon it to go to the jury for the reason, as it is claimed, that the evidence does not show that any notice was ever given the company of the enactment of this ordinance. To sustain its contention in this behalf appellant relies upon *Village of Altamont v. Baltimore & O. S. W. R. Co.*, 184 Ill. 47. It should be noted that the *Altamont* case was a suit to recover from a railroad company a penalty under the "Railroad Act" which places the duty upon railroads to maintain flagman at street crossings upon being given 60 days' notice to do so by the authorities. The identical question here raised has been passed upon by our Supreme Court in *Rosenthal v. Chicago & A. R. Co.*, 255 Ill. 552. In that case it was urged as error that the trial court ad-

mitted in evidence an ordinance requiring the railroad company to construct gates at a street crossing without requiring proof that notice had been given the company of such ordinance. The Supreme Court referred to the *Altamont* case but held: "Under clause 27 of paragraph 62 of the Cities and Villages Act [J. & A. ¶ 1334], authority is conferred to require railroad companies to keep flagmen at railroad crossings of streets 'and provide protection against injuries to persons and property in the use of such railroads.' * * * The legislature placed no provision in the act requiring notice to be given the railroad company of the passage of an ordinance for the installation of gates at crossings, and it is not for courts to read any such requirement into the statute. The ordinance introduced in evidence was passed and published more than 2 years before the injury occurred for which this suit was brought, and we are of the opinion plaintiff in error was bound to take notice of it, and was bound by it." We think that case is decisive of the question raised here by appellant, and that it was not error to admit the ordinance in evidence without proof of notice to the company. Neither do we think there is merit in appellant's contention that the ordinance must by its terms find that it was necessary to place a flagman at the crossing in question. It was not therefore error for the court to submit to the jury the counts based upon the flagman's ordinance of 1902. It is contended the evidence shows that the flagman's ordinance of 1909 was not legally passed by the city council and that the court erred in not granting appellant's motion to exclude the ordinance from evidence, and to give the jury a peremptory instruction as to the ninth and eleventh counts. The question presented is whether or not the minutes of the city council failed to show that the ordinance of 1909 was passed by the city council and thus overcome the prima facie proof made by the introduction of the

ordinance itself. The record of the city council was as follows: "On motion of Alderman Weber an ordinance—'Whereas, it is necessary for the proper protection of persons and teams passing over and across the Illinois Central Railroad at Fayette avenue, Jefferson street,' Planters avenue and Railroad avenue in the City of Effingham, that a flagman be placed and maintained at each of said crossings.' On roll call Feldhake, Wolters, Weber, Broom, Ryman, Neibrugge, voting Aye; Greuel voting Nay." The record does not disclose what the motion was. It does not very definitely describe the ordinance, and we are of the opinion that it seems to show the ordinance was not legally passed. It was therefore in our opinion error for the trial court to refuse to exclude the ordinance from the evidence, and the court should have given the jury a peremptory instruction as to the count based on this ordinance. Even though the 1909 ordinance had been properly passed, we do not believe that it is so inconsistent with the 1902 ordinance that it would operate to repeal the same.

The next point urged by the attorneys for appellant is that the verdict of the jury is against the manifest weight of the evidence. Since this case must be remanded for trial, we will not express any opinion as to the weight of the evidence upon the whole case. Attorneys for appellant urged as error at considerable length the admission of certain testimony for appellee. It is impossible within the reasonable limits of this opinion to consider all the isolated bits of evidence discussed by counsel, but we will refer to and dispose of some of the objections. It was error to permit the father of appellee over objections of appellant to testify to complaints made by appellee long after the injury. "To carry the rule so far as to permit either physicians or others to testify to declarations made so long after the infliction of the injury as to be no part of the *res gestæ,* not during

treatment or attendance upon the injured party, or not upon an examination by a physician for the purpose of determining the nature, character and extent of the injury, would be to afford an opportunity to a party to manufacture evidence in his own behalf and which, at least in most instances, could not be refuted or overcome." *West Chicago St. R. Co. v. Carr,* 170 Ill. 478; *West Chicago St. R. Co. v. Kennelly,* 170 Ill. 508. Under these authorities we think the admission of such evidence was erroneous. Dr. Hoffman, a witness called by appellee, was permitted to give over objections his opinion as to the future result of the injury sustained by appellee. He testified as follows: "My opinion is that her mind will gradually get worse from this injury she has sustained, be in the condition it is now in the future, only worse, and that she will not be capable of taking care of herself, know right from wrong. And especially about her sexual condition, because the animal parts of her body—the muscles and the bones and flesh—they are growing ahead of the mental process of her mind, which has been mostly damaged through this shock— the gray matter, the upper part of her brain—and she will not be able to take care of herself in a moral way as she would be in a physical way, because that is so far behind the other part, or the other part so far ahead, the result being that the mind don't get ahead and keep up with the body. In other words, she can be taken advantage of by any body and she not knowing what it means." The true rule seems to be that all the consequences of such an injury, future as well as past, which are shown by the evidence to be reasonably certain to result from the injury are to be taken into consideration, but that such future consequences to be relied upon must be reasonably certain to result and cannot be speculative. The difficulty is to decide which of such future consequences the evidence shows to be reasonably cer-

tain and which are speculative. In regard to that class of evidence, our Supreme Court in the case of *Lauth v. Chicago Union Traction Co.,* 244 Ill. 244, said: "In this class of cases, in estimating the pecuniary loss, all the consequences of the injury, future as well as past, which are shown by the evidence to be reasonably certain to result from the injury, are to be taken into consideration. (*Wrisley Co. v. Burke,* 203 Ill. 250.) To form a proper basis for recovery, however, it is necessary that the consequences relied on must be reasonably certain to result. They cannot be purely speculative. * * * The rule is correctly stated in *Strohm v. New York, L. E. & W. R. Co.,* 96 N. Y. 305, as follows: 'Future consequences, which are reasonably to be expected to follow an injury, may be given in evidence for the purpose of enhancing the damages to be awarded, but to entitle such apprehended consequences to be considered by the jury they must be such as in the ordinary course of nature are reasonably certain to ensue. Consequences which are contingent, speculative or merely possible, are not proper to be considered in ascertaining the damages. It is not enough that the injuries received may develop into more serious conditions than those which are visible at the time of the injury, nor even that they are likely to so develop. To entitle a plaintiff to recover present damages for apprehended future consequences there must be such a degree of probability of their occurring as amounts to a reasonable certainty that they will result from the original injury.' In discussing this question in *Chicago City Ry. Co. v. Henry,* 62 Ill. 142, this court said: 'It is true, no one can determine with absolute certainty what the result of such an injury might be; but something more than mere conjecture, mere probabilities, should appear to warrant the giving of damages for future disabilities that may never be realized.' " This same rule is laid down in

*Lyons v. Chicago City R. Co.*, 258 Ill. 75; *Schlauder v. Chicago & S. Traction Co.*, 253 Ill. 160; *Junget v. Aurora, E. & C. Ry. Co.*, 177 Ill. App. 442; *Ovens v. Chicago City Ry. Co.*, 171 Ill. App. 647. Under these authorities we are of the opinion that it was error to admit the testimony of Dr. Hoffman above referred to, and that his testimony as to what appellee might do when grown, by reason of the condition of her mind, was particularly prejudicial. It was also error to admit testimony of appellee's father along this same line. On cross-examination of some neighbors of appellee's family who were placed on the stand by appellant, appellee was permitted over objections of appellant to ask these witnesses about a Mrs. Page and whether or not Mrs. Page did not have an ill-feeling for appellee's family. Mrs. Page was not a witness in the case and we fail to see how she is so connected with it as to make her feeling towards appellee's family material. Such cross-examination should not have been permitted.

Appellee, after the accident, was taken to St. Anthony's Hospital in Effingham. The trial court refused to allow appellant to introduce in evidence the clinical record of that hospital concerning appellee. Dr. Walker produced the record while on the witness stand and testified that he had obtained it from the bookkeeper at the hospital a few hours before; that it was in the handwriting of Sister Matthia, one of the nurses at the hospital; that he had seen her write many times and recognized her handwriting, and that she had attended cases which he had had at the hospital. He further testified as to the manner in which such records were kept at the hospital. It appears that the nurse, Sister Matthia, had died before the trial. Dr. Wettstein testified that he had seen the records at the hospital at the time appellee was there; that the records were made from day to day; that he knew they were true and correct and that

they were made by the sister in charge, Sister Matthia. This witness further testified that Sister Matthia was on duty part of the time but that the nurses changed from time to time and one nurse would be on 4 or 5 hours and then another. We are of the opinion that this evidence sufficiently identified the records so that they were admissible in evidence and that it was error to exclude them. Appellee was permitted to introduce in evidence certain pages of the bill of exceptions prepared on the former appeal of this case. It appears that the city ordinance of 1909 had been lost, and that this bill of exceptions was introduced in evidence to show what that ordinance was and to show that a notice of the passage of such ordinance had been given appellant's agent. We are of the opinion that the bill of exceptions was not admissible for these purposes. Further, since we have held that the evidence shows such ordinance was not legally passed, the bill of exceptions should have been excluded. The evidence of the present condition of appellee is uncertain and not satisfactory, and she was not present at the trial. We therefore believe that some of the rulings of the trial court upon the evidence above referred to were peculiarly prejudicial on that account.

Appellant has assigned and urged as error the trial court's refusal to give an instruction offered by it to the effect that there was no evidence in the case tending to show wilful and wanton negligence of the defendant. Under the view taken by us of this case there was sufficient evidence to require this question to be submitted to the jury and it was not error to refuse this instruction. Appellant's third and fifth refused instructions were to the effect that the jury should not take into consideration the ordinance of 1909 and the notice thereof given appellant. Since we are of opinion the record of the city council did not show that this ordinance was legally passed, we hold it was error to refuse these instructions. Com-

plaint is also made by appellant of the court's refusal to give its instructions numbered 13, 15, 16 and 18. These instructions all told the jury in effect that there was no evidence of wilful and wanton negligence on the part of the defendant. As we have heretofore pointed out, it was proper for the court to submit that question to the jury and no error was committed in refusing such instructions.

While a number of the instructions given for appellee which are criticised by appellant are not carefully drawn, yet none of them appears to be so erroneous as to constitute reversible error. For the material errors in the trial of the case above indicated, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*