Mary B. Babbitt et al., Appellees, v. V. Arthur May, Trading as May Universal Appliances, Appellant.

**Gen. No. 10,765.**

Second District.
February 17, 1955.
Rehearing denied June 17, 1955.
Released for publication June 20, 1955.

Little, Presbrey & Ohse, of Aurora, for appellant; Merritt J. Little, George W. Presbrey, and C. Robert Ohse, all of Aurora, of counsel.

Sears & Streit, Simpson & Simpson, all of Aurora, for appellees; Edward F. Streit, Robert F. Casey, May R. Simpson, and John P. Simpson, all of Aurora, of counsel.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

On January 6, 1951, Mary B. Babbitt and Clyde W. Babbitt, her husband, entered the appliance store known as May Universal Appliances, operated by V. Arthur May. They concluded a purchase for a television set and went with the salesman back to the wrapping counter where Mrs. Babbitt observed some electric roasters on some shelves back of where the television set had been placed. The salesman, Mr. Hergenhahn, told the Babbitts to go over and look at the roasters. There was a stairway close to these roasters and as Mrs. Babbitt stepped back to inquire the price of them, she stepped into the stairway and fell backwards, down to the bottom of the stairway. She had not noticed the stairway. The landing where the roasters were displayed was approximately four feet long and thirty-six inches wide. As she fell down the stairway, she bumped her head and received several bad bruises. She was taken to the office of Dr. Elmer M. Thomas, a local physician, and he examined her back, head, legs and shoulders.

She and her husband started a suit in the city court of Aurora, in Kane county, Illinois, for damages that

she received on account of her injuries, alleging that it was through the negligence of the defendant, V. Arthur May, that caused her injuries. The husband started suit against V. Arthur May, for damages that he sustained for expenses that he had been put to, for doctor bills, nursing bills and hospital bills, and for the loss of consortium. The case was tried before a jury that rendered a verdict in favor of Mary B. Babbitt for $7,000 and for Clyde W. Babbitt for $1,200. At the close of plaintiffs' case the defendant entered a motion for a directed verdict. This motion was denied. Later the defendant entered a motion for a new trial; this motion was also denied, and a motion for judgment notwithstanding the verdict. This motion was also denied and judgment entered on the verdicts, and it is from these judgments that the appeal has been perfected to this court.

Mrs. Babbitt was called as a witness and testified that she and her husband had gone to the May Universal Appliance Store for the purpose of purchasing a television set; that after they made the purchase, they went back to the wrapping desk and she noticed there were some roasters on a shelf close to the desk; that the salesman that she had been dealing with for the television set, told her to look at them. She went over and was looking at them and took one step backwards, to better see the price on the appliances, when she stepped into space and fell down into the stairway; that she rolled clear down to the bottom of the stairs; that in doing so she bumped her head on the stairway and received other bruises; that she was taken to Doctor Thomas' office and he there examined her and found that she had numerous bruises, a swelling on her head and left knee; that the doctor prescribed for her certain medicines and told her to stay in bed; that she was in and out of bed for a period of ten days to two weeks. The swelling on her head, back and knee disappeared;

that immediately after the accident, and it has continued since, to the time of the trial, she has suffered severe headaches; that she was not so afflicted before the accident, except one time that she relates that she had been up all night with her father-in-law the night he died, and that is the only time that she had ever consulted a doctor in regard to her headaches; that since the accident she suffers with them frequently and as much as four days' duration.

Doctor E. M. Thomas' deposition was taken by consent of the parties and read to the jury. He stated that immediately after the accident he gave Mrs. Babbitt a general examination and disclosed she had a swelling on the top and back of her head, and injury or contusion to the back of her right arm and left knee, due to the twist that she sustained in falling down the stairs. The two bruises on her head were located on the top of her head where the cowlick would appear in the hairline and the other bruise was to the left of the mid-region between the mid-line and the ear; that he treated her several times for severe headaches; that whenever he made a house call for Mrs. Babbitt, she would be in bed and suffering from the headaches. None of this testimony was objected to by the defendant.

The doctor was asked this question. "Now doctor, do you have an opinion, based upon a reasonable degree of medical certainty, as to whether or not there was a cause or connection between Mrs. Babbitt's fall on the stairway of the May Company on January 6, 1951, and the condition of illness that you have described, the headaches?" He answered, "I have an opinion." "Could you tell us what that opinion is?" He answered, "My opinion is that those headaches were increased in frequency and in severity by this fall." He did not have an opinion as to whether this was a temporary or permanent condition. These questions and answers were objected to by the defendant.

88

Helen Cearlock testified that she was a registered nurse. She was acquainted with the plaintiff, Mary Babbitt, prior to January 6, 1951; that Mrs. Babbitt acted as a baby sitter for her; that she would take her child to Mrs. Babbitt's house in the morning and pick her up in the evening. This she would do five days a week prior to January 6, 1951; that at that time Mrs. Babbitt appeared to her to be in normal health; that after January 6, 1951, she saw that Mrs. Babbitt had a lump on her head and a bruise on her back and one on her knee; that during the year 1951, and 1952, she saw Mrs. Babbitt twenty to fifty times, and Doctor Thomas and Doctor Wunsch arranged with her to give Mrs. Babbitt hypodermic injections, which were administered at Mrs. Babbitt's home; that Mrs. Babbitt would be in bed and appeared to her of being in pain.

Doctor Harry E. Rice was called as a witness and testified as to the condition that he found Mrs. Babbitt in, in September 1952. She came to his office complaining of headaches. He gave her a thorough examination and told of the treatment that he prescribed for her, and advised having X-rays taken of her skull; that he continued to treat her for headaches from September 1952, until the time of the trial. He was asked the question whether he was able to ascertain pathologically what was causing these headaches, and he stated that he could not. In answer to the question whether these symptoms were subjective, this question was objected to by the defendant, but overruled and he answered, "Headaches are subjective sometimes and objective other times; I will say this, I have seen Mrs. Babbitt in my office when her head was bothering her, I am sure. I think from my own experience, I can say truthfully that from her appearance she was suffering from headaches." The abstract does not show, but the additional abstract shows that the doctor testified that he did not consider that Mrs. Babbitt was suffering from migraine headaches. He stated that he had an opinion based on

89

a reasonable degree of medical certainty whether or not this condition he had found in Mrs. Babbitt might or could be caused by trauma or injury. His answer was, "My honest opinion is that I feel Mrs. Babbitt was post-traumatic coming after injuries notwithstanding that I have not been able to demonstrate it pathologically." Neither the abstract nor additional abstract shows that there was any objection made by the defendant to this question and answer.

In addition to the instructions given to the jury, the additional abstract shows that at the request of the defendant, and over the objection of the plaintiffs, four special interrogatories were submitted to the jury for their consideration. First, "Was the plaintiff, Mary B. Babbitt, in the exercise of ordinary care and caution for her own safety just before and at the time and place of the occurrence on January 6, 1951?" The jury answered, "Yes." The second, "Was the fall of the plaintiff, Mary B. Babbitt, on January 6, 1951, proximately caused by the negligence of the defendant?" The jury answered, "Yes." The third, "Was the defendant, Arthur May, on January 6, 1951, guilty of negligence with regard to the safety of Mary B. Babbitt?" The jury answered, "Yes." The fourth, "Do you find from the evidence that the plaintiff, Mary B. Babbitt, suffered bodily injury as a direct and proximate result of her fall?" The jury answered, "Yes." The appellant does not claim that either of the verdicts is excessive.

It is not argued by the defendant that he was not guilty of negligence which was the proximate cause of the injury to the plaintiff, but he insists that the plaintiff, Mary B. Babbitt, was guilty of contributory negligence as a matter of law, and the court erred in not directing a verdict in favor of the defendant. The defendant offered no evidence to rebut that given by the plaintiffs, and the case went to the jury on the plaintiffs' evidence alone. The jury found that by their

90

special interrogatories, and by their general verdict, that the defendant was guilty of negligence which was the proximate cause of the plaintiffs' injury, and that she was free from contributory negligence. From a review of the evidence in the case, it is our conclusion that the jury properly found in favor of the plaintiffs.

██ ██ It is seriously contended by the appellant that the court committed reversible error in allowing the doctors to testify in regard to their opinion, as to the cause or connection of the headaches that the plaintiff was suffering from, and the injuries she sustained at the time of the fall in the defendant's store. The leading case on this subject is City of Chicago v. Didier, 227 Ill. 571. The court was considering the same question as presented here and in their opinion we find the following: "There is some apparent confusion in the authorities on the question as to whether, in such cases as this, a medical expert may be asked his opinion as to whether the physical conditions of the injured party are the result of the injuries complained of. Where there is a conflict in the evidence as to whether the plaintiff was injured in the manner claimed, it is not competent for witnesses to give their opinions on that subject; but where there is no dispute as to the manner of the injury, and the question is as to whether certain physical conditions were caused by the injury complained of, and the determination of the question involves a special skill or trade, or a knowledge of science that does not come within the experience of laymen possessing the education or knowledge common to those moving in the ordinary walks and engaged in the ordinary occupations of life, then persons possessing the special knowledge, skill or science may give their opinions on the subject. Appellant contends that the inquiry should be as to whether the injury might have produced the physical conditions, and not whether it

91

did produce them. Expressions will be found in some cases tending to support that view, but the weight of authority in this State, as well as in other jurisdictions, does not support appellant's contention." The court then reviewed the case of Illinois Cent. R. Co. v. Smith, 208 Ill. 608, and distinguished the facts and law in that case from the one that they had been considering. The Illinois Cent. R. Co. case is one strongly relied upon by the appellant in the instant case. After reviewing the case the court then concluded with this language: "We think the apparent confusion of the authorities arises from a failure to distinguish between cases where the manner in which the injury is received is admitted and cases where the manner of the injury is denied. Illinois Central Railroad Co. v. Smith, supra, belongs to the latter class of cases and the case at bar to the former class."

An examination of the cases cited by the appellants to sustain their contention that this evidence was improper are found to be cases where there was a dispute in regard to how the accident occurred. In the instant case there is no dispute but Mrs. Babbitt fell down the stairway in the defendant's store and was injured and that she has been suffering from headaches ever since.

The City of Chicago v. Didier, supra, case has been cited many times and approved both by our Supreme and Appellate Courts. In The People v. Minzer, 358 Ill. 345 it is stated: "None of his witnesses denied the fact that the deceased had been strangled. In cases where there is no dispute as to the manner and cause of the injury and no dispute that there was an injury sustained by reason of the acts of which complaint is made, this court has held that a physician may then directly testify that a later malady was or was not caused by the accident or original injury, upon the same principle that he may testify that death resulted from a certain wound."

92

In the case of The People v. Fedora, 393 Ill. 165, the court uses this language: "The Fellows-Kimbrough case, People v. Rongetti, 338 Ill. 56, and subsequent cases cited by plaintiffs in error, state the rule to be that where there is no dispute as to the manner and cause of the injury and no dispute that there was an injury sustained by reason of the acts of which complaint is made, a physician may then directly testify that a later malady was or was not caused by the accident or original injury, upon the same principle that he may testify that death resulted from a certain wound. In City of Chicago v. Didier, 227 Ill. 571, we held that if there is no dispute that plaintiff was injured or as to the manner in which the injury was received, but the question is whether certain existing physical conditions are the result of the injury, the determination of which question requires special knowledge, physicians possessing such knowledge may express their opinions as to whether the physical conditions were the result of the injury." To the same effect is Hallis v. Stover Co., 275 Ill. App. 44 and Koch v. City of Chicago, 297 Ill. App. 103.

It is our conclusion that the court properly admitted the evidence of the doctors and we find no reversible error in the case, and the judgment appealed from is hereby affirmed.

Affirmed.