George Melford, Jr., a Minor, by George Melford, His Father and Next Friend, and George Melford, Appellee, v. Gaus and Brown Construction Co., Inc., Appellant.

Gen. No. 47,199.

First District, Second Division.
May 28, 1958.
Released for publication July 1, 1958.

Kirkland, Fleming, Green, Martin & Ellis, of Chicago (David Jacker, William H. Symmes, and Robert Klugman, of counsel) for appellant.

Owens, Owens & Rinn, of Chicago (John E. Owens, and Walter B. Bieschke, of counsel) for appellee.

PRESIDING JUSTICE KILEY delivered the opinion of the court.

This is a personal injury action in behalf of a minor child injured while playing on and about the excavation and foundation for a new building on Lincoln Avenue in Chicago. Verdict and judgment were in plaintiff's favor for $20,000 and defendant appeals.

The minor, Melford Jr., then nine years of age, was injured June 27, 1950, when, while playing tag with another boy, he fell backwards over the front edge of the wooden platform covering the foundation into the space between the platform and the Lincoln street sidewalk. He fell twelve or fourteen feet to the basement level and struck his head on a "heavy plank" on the ground.

The double sidewalk on Lincoln Avenue in front of the excavation was broken up but the part of the walk near the street was cleared so that it could be used by pedestrians. The only barricades in use were to pre-

vent passersby from using the inner part of the sidewalk. There were no barricades to prevent entry upon the platform or excavation and the boys entered over a plank between the sidewalk and platform or by leaping over the space between them. They could also enter readily from the alley or, as Melford Jr. did the day he fell, from the side at the rear of the building adjoining the excavation.

█ Defendant contends there was no evidence of negligence. On this contention we apply the familiar rule and consider only the evidence favorable to plaintiff, together with legal inferences drawn most strongly in plaintiff's favor, disregard contrary or contradictory evidence and decide whether there is any evidence to prove imprudence on defendant's part. Hunter v. Troup, 315 Ill. 293; Mahan v. Richardson, 284 Ill. App. 493; Nagle v. City of Chicago, 15 Ill.App.2d 533.

Children played on and about the excavation daily and used ladders going from the foundation platform to the basement level or by swinging "from our arms" and dropping. It "seemed a good place to play." Melford Jr. had not played at the excavation before the day he was injured. On that day he played with other boys from nine thirty in the morning until lunch, and after lunch he played till injured. Men were working there and did not "chase us off." Near the front of the excavation was a pile of "concrete frames" about six feet high. His playmate "got on the pile," and Melford Jr. "took a few steps back and fell off" the platform.

█ From that testimony the jury could infer that defendant knew, or should have known, that the unbarricaded, unguarded and easily accessible platform over the excavation and foundation would attract small boys; that the platform did not completely cover the foundation and adjoining spaces; and that small boys ran about the platform and about the basement

level and "swinging from" their arms dropped from the platform to the ground 12 or 14 feet below. And the jury could infer that defendant should have foreseen that in playing about the platform a small boy might take a few steps backwards and fall into an uncovered space to the ground below and be injured. We think the testimony was sufficient to take the case to the jury. Kahn v. James Burton Co., 5 Ill.2d 614; Wilinski v. Belmont Builders, Inc., 14 Ill.App.2d 100. The "latent danger" element was referred to in the Wilinski case not because that element is essential but to show that even under the rule stated in Neal v. Home Builders, 111 N.E.2d 280 (Ind.) the Wilinski proof was enough.

We see no merit in defendant's contentions of error in the admission of medical testimony.

The principal medical testimony was based on three electroencephalographic tests made of Melford Jr.'s brain in 1950, 1955 and 1956. The graphs of these tests were introduced in evidence. They consist of tracings made on paper by an electrical device which measures brain impulses. The impulses are detected by electrodes placed on the head of the patient and are recorded in the tracings. The tracings are somewhat like those made in an electrocardiograph.

The office reports upon the tests (ex. 5) contain the name and address of Melford Jr. and of his doctor, Dr. Andelman, and one of them contains the name and address of the minor's attorney. The reports clearly refer to electroencephalographs of Melford Jr. Exhibit No. 5 was supplemented by an electroencephalograph about ten feet long, made at the October 1950 test. Also the expert at whose office the tests were made testified he had written an explanatory letter to Dr. Andelman, after the tests were made. Exhibit No. 6 is a graph of tracings more than 60 feet long. Pasted on the reverse side of this graph is an office record

clearly referring to Melford Jr. We think there was sufficient identification of the exhibits as graphs of tests of Melford Jr.

The expert Dr. Gibbs testified that when tests are made in his office he sets up prescribed conditions which give an objective finding when extraneous radiation disturbances and patient disturbances are held to a minimum; that the expert's technicians try to keep these disturbances at a minimum; that the tests made when the patient is asleep, as Melford Jr. was tested in part, are free of disturbances; and that the instant tests were made under Dr. Gibbs' supervision. His testimony justifies the inference that the instrument was properly "calibrated" and in proper functional order and that the graphs were made under competent technical care. There was testimony, moreover, that experts can tell from examining the tracings whether the results of a given test are valid. There was no expert or other witness for defendant to refute plaintiff's medical testimony.

■■ There is no Illinois case dealing with electroencephalographs and none from other jurisdictions have been cited. The parties argue the analogy between electroencephalographs and other medical testing devices. Defendant relies upon Stevens v. Illinois Cent. R. Co., 306 Ill. 370, an x-ray case. The facts there clearly showed no basis for an inference that the x-ray correctly and accurately portrayed the condition it purported to represent so as to come within the rule stated by the court (page 375) that x-rays "cannot be received as evidence until proper proof of their correctness and accuracy is produced." Defendant also refers us to Quadlander v. Kansas City Public Service Co., 224 S.W.2d 396 (Mo. Court of Appeals), where the court upheld a ruling which excluded an audiogram. The court there thought (page 401) that the same "principles and specific requirements" gov-

erning x-ray should apply to audiograms. This court in Lazarus v. Friel, 331 Ill. App. 552, rejected the argument that x-rays should not be admitted for the sole reason that the technician who took the pictures was not produced as a witness. We conclude there was no error in admitting exhibits, Nos. 5, 6 and 7.

■ We are satisfied too that defendant was not prejudiced by markings, comments and "histories" on the exhibits. For the most part the matter was cumulative of other evidence and where not cumulative had little significance.

An important question is whether there was prejudicial error in admitting some testimony of Dr. Andelman and in admitting "speculative" medical testimony.

■ Dr. Andelman testified that in 1956 after the trial began, Melford Jr. told him that he had suffered periodic dizzy spells since the fall in 1950. The testimony was properly received since the doctor was not called merely as an expert at the time of the trial as in Horstman v. Chicago Rys. Co., 210 Ill. App. 144, and Barnes v. Chicago City Ry. Co., 147 Ill. App. 601. In Bowman v. Illinois Cent. R. Co., 9 Ill.App.2d 182, 220–21, the court found error in permitting a non-attending physician to testify to subjective symptoms. None of these cases are applicable. Dr. Andelman was the family pediatrician and moreover Melford Jr. himself testified that he had the spells. The question of the weight of the testimony of the spells was for the jury.

■ There is no merit to the point that there was error in permitting Dr. Andelman's testimony to precede the introduction of the graphs. His diagnosis, to which he testified, was based partially upon them, and his testimony was necessary as a basis for the hypothetical put to the experts. He did not interpret the graphs.

■ The electroencephalographs showed changes in the condition of Melford Jr.'s brain from "a mild

504

abnormality" in 1950, through "positive spike seizures" in one hemisphere of the brain in the tracings in 1955, to "spike seizures" in both hemispheres of the brain in 1956. Dr. Andelman testified that he clinically observed a personality change in the boy in 1952. This testimony of change was corroborated by the boy's mother. The doctor recommended a psychological study which was not made. After the last electroencephalograph test "a regimen of epileptic treatments" was begun. The doctor's opinion was that "all conditions of progression" were present and that because of the changes shown in the test there was a "good chance" of eventual epileptic seizures. Defendant disputed neither the fact of the fall nor the visible physical injuries suffered by Melford Jr. This being so, there was no error in testimony of Dr. Andelman that, "I think this is related to the event that occurred." City of Chicago v. Didier, 227 Ill. 571, 575–80; Babbitt v. May, 6 Ill.App.2d 85.

Dr. Gibbs, the expert electroencephalographer testified that the "spike seizure" patterns shown in the graphs, correlated with the testimony of "dizziness," indicated "a lack of control of the rhythmic activity of the brain" which is "epilepsy as defined in the more technical, modern way," and the testimony of Melford Jr. as to his fogginess, dizziness, head pains and strange head sensations were common "in certain types of epileptic or epileptiform disorders"; that the boy's condition in older terms was a petit mal which "can eventually become a full blown epilepsy with convulsions"; that no medicines will eradicate this disorder; and that no treatment can eliminate it and surgery is out of the question.

■ Dr. Kesert, plaintiff's expert in neurology, gave his opinion that on the "duration of the symptoms, six year period . . . and . . . the findings are getting worse" the injury was permanent. Defendant contends error was committed in permitting

505

Dr. Kesert to answer a hypothetical question "based on the opinion of another expert." There is no merit to this contention. The doctor expressly stated the basis of his opinion: (a) the evidence of Melford Jr.'s physical condition after his fall, and (b) the testimony of the electroencephalographs showing progressive abnormality. These were facts in evidence and were properly included in the hypothetical question and a proper basis of the opinion. The court said it would strike other testimony of this expert based on subjective symptoms and on hearsay. Taken as a whole we think the incident removed the criticism made of the testimony in City of Chicago v. France, 124 Ill. App. 648, 651, and Elward v. Illinois Cent. R. Co., 161 Ill. App. 630, 635, 636.

■■ We think the medical evidence is not "speculative" and that the jury could infer that there was reasonable medical certainty that the thalamic epilepsy would grow progressively worse. That is enough. Lauth v. Chicago Union Traction Co., 244 Ill. 244; Boss v. Illinois Cent. R. Co., 221 Ill. App. 504, 512. The facts in Gaydos v. Peterson, 300 Ill. App. 219, 227, and in Told v. Madison Bldg. Co., 216 Ill. App. 29, distinguish them from the instant case. There was no expert medical testimony presented by defendant. We think there was sufficient showing made of the causal connection between the fall of Melford Jr. and his injury, in the testimony of Melford Jr.; of his mother; and of his pediatrician and of three expert witnesses whose testimony was not rebutted.

■ In view of our decision on the questions of the extent of the injury to Melford Jr., we are of the opinion that there is no merit to the contention that the verdict is excessive.

■ The cases cited by defendant do not support a claim of prejudicial error in the argument to the jury. We agree with the comment in Patterson v. Pea-

506

body Coal Co., 3 Ill.App.2d 311, 318, that the name of the law firm representing defendant had "no part" in the law suit and the several references to that firm should not have been made, and that the argument should not have been persisted in when objections were sustained. Gregory v. Richey, 307 Ill. 219, 231. Neither of these, however, prevented a fair trial for defendant. The argument did not attempt "to have the jury put itself in the position" of the injured, as in Thomas v. Illinois Power & Light Corp., 247 Ill. App. 378, 388, so far as the report of the case shows; nor does it urge counsel's "personal opinions or feelings on the jury" as in Goad v. Grissom, 324 Ill. App. 123, 129.

Finally, we think that there was no error in the giving of plaintiff's instruction No. 9. It does not come within the rule in Signa v. Alluri, 351 Ill. App. 11, 20; it is only about one half the length of the complaint and is not directory. The term "proximate cause" used in the instruction is defined in another.

For the reasons given the judgment is affirmed.

Affirmed.

LEWE and MURPHY, JJ., concur.